[No. 7776. Decided June 28, 1909.]

THE STATE OF WASHINGTON *on the Relation of John D. Atkinson, Attorney General, Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

STATUTES—TIME OF TAKING EFFECT—COMMERCE—LIMITING HOURS OF LABOR—CARRIERS—REGULATION. Act Cong., March 4, 1907, making it unlawful for any common carrier to require employees to remain on duty for a longer period than sixteen consecutive hours, and providing that the act shall "take effect and be in force one year after its passage," did not take effect as a law until the end of such period; and it did not supersede, during such year, a prior state statute on the same subject (Laws '07, p. 25), upon any principle of comity, or upon the theory that Congress had occupied the field of statutory regulation and fixed a reasonable time to allow carriers to comply with the regulations.

[1]Reported in 102 Pac. 876.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered December 4, 1907, in favor of the plaintiff, upon sustaining a demurrer to the answer, in a prosecution for the violation of a statute regulating the hours of service of railway employees. Affirmed.

*Geo. T. Reid* and *J. W. Quick,* for appellant.

*John D. Atkinson, Attorney General, J. B. Alexander* and *W. V. Tanner, Assistants,* for respondent.

FULLERTON, J.—The legislature of the state of Washington at its session of 1907 passed an act (Laws 1907, p. 25, ch. 20) regulating the hours of service of railroad employees. By the act it was made unlawful for any common carrier operating a railroad to require or permit any of its employees engaged in or connected with the movement of its trains to remain on duty for a longer period than sixteen consecutive hours, except in certain specified instances. A violation of the act was made a misdemeanor, subjecting the offending carrier to a penalty of not less than one hundred nor more than one thousand dollars for each offense, to be recovered in a suit brought by the attorney general on a duly verified information being filed with him showing that a violation of the act had occurred. This act, as it had no emergency clause, went into effect on June 12, 1907.

On March 4, 1907, the Congress of the United States passed an act on the same subject-matter. 34 Stat. at Large, p. 1415, ch. 2939. In this act, among other provisions, it was made unlawful for any common carrier, its officers or agents, to require or permit any employee to be or remain on duty for a longer period than sixteen consecutive hours, under a penalty not to exceed five hundred dollars for each and every violation, to be recovered by suit brought by the United States district attorney in the district court of the United States having jurisdiction in the locality where the act was committed, on satisfactory evidence being lodged with

the district attorney that there has been a violation of the
act.  It was expressly provided, however, that this act should
"take effect and be in force one year after its passage," or
on March 4, 1908.

On August 26, 1907, the attorney general of the state of
Washington brought the present action against the appel-
lant, charging it with a violation of the state statute in the
operation of one of its freight trains between Seattle and
Sedro Woolley, both points being within the state of Wash-
ington.   In the complaint it was averred that the train left
the terminal station at Seattle at 6: 30 a. m. of July 3, 1907,
and reached Sedro Woolley, another terminal station, at
2: 15 a. m. of July 4, 1907, being on the way nineteen hours
and forty-five minutes, during which time the employees in
charge of the train, to wit, the engineer, fireman, two brake-
men, and the conductor were required to be on continuous
duty.   Judgment was demanded for one thousand dollars, the
maximum amount of the penalty.

The appellant answered admitting the specific charge that
it had at the time mentioned required its employees to work
continuously for a period of nineteen hours, but denied that
it was thereby guilty of violating any state statute.   It
then set out affirmatively that it was a common carrier en-
gaged in carrying interstate as well as intrastate commerce;
that the freight train on which its employees were engaged
at the time complained of was carrying various and sundry
articles of merchandise shipped from points without the state
to points within the state of Washington; various and sun-
dry articles of merchandise shipped from points within the
state of Washington to points without such state; and var-
ious and sundry articles of merchandise shipped through the
state from points without the state to other points without
the state.   It then set out the act of Congress of March 4,
1907, above mentioned, and averred that it was governed in
relation to the number of hours it might require its employees
to remain continuously on duty by that statute, and that the

statute of the state regulating such hours of labor was not, at the time alleged in the complaint of the plaintiff, applicable to that particular train, or the employees engaged therein; and claimed immunity from the penalties imposed thereby. A demurrer was interposed to the answer, and sustained, whereupon the appellant elected to stand thereon and refused to plead further. Judgment was thereupon entered against it for the full amount of the penalty, and this appeal taken therefrom.

Counsel for the appellant concede that it is within the power of the state, in the absence of Congressional legislation on the subject, to enact laws operative within the boundaries of the state regulating the number of hours an employee of a railroad company can be required to remain on continuous duty, even though the railroad company may be a common carrier engaged in interstate commerce. On the other hand, it is conceded by the state that the power of the Congress to regulate interstate commerce is plenary, and that, as an incident to this power, the Congress may regulate by legislation the instrumentalities engaged in the business, and may prescribe the number of consecutive hours an employee of a carrier so engaged shall be required to remain on duty; and that when it does legislate upon the subject, its act supersedes any and all state legislation on that particular subject. In fact, these propositions can hardly be said to be debatable in the state courts, since the Federal courts, whose decisions are authoritative on questions of this character, have repeatedly announced them as governing principles in determining the validity of regulative legislation concerning carriers of interstate commerce. *Escanaba etc. Transp. Co. v. Chicago,* 107 U. S. 678, 2 Sup. Ct. 185, 27 L. Ed. 442; *Morgan etc. S. S. Co. v. Louisiana Board of Health,* 118 U. S. 455, 6 Sup. Ct. 1114, 30 L. Ed. 237; *Nashville etc. R. Co. v. Alabama,* 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352; *Gladson v. Minnesota,* 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064; *Lake Shore etc. R. Co. v. Ohio,* 173 U. S. 285, 19

Sup. Ct. 465, 43 L. Ed. 702; *Erb v. Morasch*, 177 U. S. 584, 20 Sup. Ct. 819, 44 L. Ed. 897.

Since, therefore, both the Congressional and state statutes relate to the same subject-matter, and purport to regulate the same specific acts, it is manifest that the Congressional statute superseded the state statute at some point of time, determined by the determination of the status of the Congressional act between the time of its enactment on March 4, 1907, and the time it became actively operative on March 4, 1908. If it had the effect of a law during the period it remained in suspension, then manifestly the state statute never went into effect, in so far as it related to roads engaged in interstate commerce; while, on the other hand, if it became effective as a law at the expiration of the year, the state statute became effective as against roads engaged in interstate commerce, on June 12, 1907, and continued in force until March 4, 1908, and was operative at the time the acts here complained of were committed.

The general rule is that a statute speaks from the time it goes into effect, whether that time be the day of its enactment or some future day to which the power enacting the statute has postponed the time of its taking effect.

"A law must be understood as beginning to speak at the moment it takes effect, and not before. If passed to take effect at a future day, it must be construed as if passed on that day, and ordered to take immediate effect." *Rice v. Ruddiman*, 10 Mich. 125.

"A statute passed to take effect at a future day must be understood as speaking from the time it goes into operation and not from the time of passage. Thus, the words 'heretofore,' 'hereafter,' and the like, have reference to the time the statute becomes effective as a law, and not to the time of passage. Before that time no rights may be acquired under it, and no one is bound to regulate his conduct according to its terms; it is equivalent to a legislative declaration that the statute shall have no effect until the designated day." 26 Am. & Eng. Ency. Law (2d ed.), p. 565.

See, also, *Price v. Hopkin*, 13 Mich. 318; *Grant v. Alpena*,

107 Mich. 335, 65 N. W. 230; *Galveston etc. R. Co. v. State,*
81 Tex. 572; *Jackman v. Garland,* 64 Me. 133; *Evansville
etc. R. Co. v. Barbee,* 59 Ind. 592.

Applying this principle to the question before us, it seems
clear that the Federal statute did not speak as a statute until
after March 4, 1908, the date on which it went into effect;
for if a law passed to take effect at a future day must be
construed as if passed on that day, and if, prior to the time
it goes into effect, no rights can be acquired under it and no
one is bound to regulate his conduct according to its terms,
it is idle to say that it has the effect of a statute between the
time of its passage and the time of its taking effect.   A stat-
ute cannot be both operative and inoperative at the same
time.   It is either a law or it is not a law, and, without
special words of limitation, when it goes into effect for one
purpose it goes into effect for all purposes.   So with this
statute, it cannot be a law between the day of its passage
and the day it is made to go into effect, for the purpose of
superseding the state statute, and not a law for any other
purpose.   Undoubtedly the Federal legislature could have
so framed its act as to supersede state legislation on the sub-
ject-matter involved, and at the same time have given the car-
riers affected a year within which to regulate their business to
meet the changed conditions, but it did not do this; it post-
poned the operation of the entire act for one year after its
passage, leaving the field open for state legislation during
that period, and this being true, it follows as of course that the
act did not suspend or supersede the state legislation on the
same subject-matter on any principle of paramount right of
legislation until the end of the year.

These propositions have seemed to us so self-evident as
scarcely to admit of debate.   Our attention, however, has
been called to two recent cases which maintain the contrary
view.   The first is *State v. Chicago etc R. Co.* (Wis.), 117
N. W. 686.   The state statute there before the court was one
limiting the number of hours a telegraph operator might be

required by the company to remain on continuous duty at the station of a railroad company engaged in interstate commerce. The court held the statute invalid on two grounds; first, that the "restriction of the hours of labor of telegraph operators engaged in moving interstate trains or traffic is a field of legislation denied to the state by the Federal constitution;" and second, that the statute "is in conflict with and in negation of the act of Congress." Discussing the latter question, the court used this language:

"Not less obviously the act of Congress declared a policy that interstate railroads should have a reasonable time in which to adjust their business to the new restrictions, by postponing the date when the law should become operative for one year after its passage, thus indicating that such period of time was so necessary to reasonable convenience of interstate commerce. Indeed, this latter implication is not only clear from the act, but made the more certain by reference to the debates and reports of committees attending the consideration and passage of the law of Congress. Hence a state provision to the effect that the time for such preparation and adjustment should be restricted to the 1st of January, 1908, as contained in chapter 575, p. 1188, Laws of 1907, is in direct conflict with the policy of Congress."

The second case is *State v. Missouri Pac. R. Co.*, 212 Mo. 658, 111 S. W. 500. The state statute before the court was similar to that in question in the former case. The decision was rested on the ground that the Federal statute had superseded the state enactment, the court saying:

"We must construe the federal act by reading into dry letter its manifest spirit and purpose. Its dry letter reads that it shall not go into effect for one year. What was the meaning of, the object to be subserved by, that suspension of the operation of the law? What, except to preserve the equities of the situation by impliedly giving common carriers engaged in interstate commerce one year in which to get a supply of experienced telegraph and telephone operators and trainmen to carry on their business without interruption and hindrance, and otherwise adjust their business affairs to the shorter hours required by that act? When broadly

judged, the federal law must be construed as a notice (in the nature of a caveat) to all state Legislatures, first, that Congress has occupied the ground by its statutory regulations; second, that in its high wisdom it has prescribed and marked out a transition or preparatory period of one year (a sort of truce period). Now with such broad and wise purposes read into the federal act shall any state Legislature thereafter sit in judgment upon the wisdom of such truce period, and say, in effect, 'We deem it too long and too liberal'? Shall it say, in effect, 'We see you have suspended your act for one whole year; we find by mathematical computation there is left six months or so which we may cover by a state law, and accordingly we shall pass a law giving shorter hours than yours that will be good at least from June 14, 1907, until March 4, 1908'? If the one law grants, by necessary implication, a breathing spell, shall the other take it away? If the one chalks out a policy, may the other rub it out? In our opinion the comity that should exist between state and federal legislative power prohibits our taking that ungracious and narrow view."

But we are unable to concur in the conclusion reached in these cases. The effect of the decisions is to make the statute speak from the time of its enactment instead of from the time it was made to become a law, thus giving it an effect that the power that enacted it did not give to it. Nor do we think there is any such question of comity involved as requires the courts to hold the state statutes inoperative. That Congress had entered the field of legislation on this subject, and that a state statute on the same subject could at most have but a short life, must indeed have been a persuasive argument before the state legislature against the passage of such an act, but it has no force in the courts. The court must take the statutes as it finds them, and can rightfully refuse to give them force only when they violate some positive principle of government laid down in the fundamental law. Statutes are not to be overturned on mere principles of comity.

The cases where this precise question is involved seem not to be many. Indeed the only one called to our attention, other than the two just referred to, where the direct question

was presented is *Larrabee v. Talbott*, 5 Gill. (Md.) 426. By the seventeenth section of the bankruptcy act of 1841, which was passed on August 19 of that year, it was expressly provided that the act should take effect only from and after the first day of February, 1842. It was claimed that the insolvent laws of Maryland were superseded in their operation between the date of the passage of the act and the date it went into effect. The court denied the claim, using this language:

"The late bankrupt law of the United States was passed on the 19th of August, 1841; but it was expressly provided by the seventeenth section of the statute, that it should take effect only from and after the first day of February, 1842. This is equivalent to declaring that the Act should have no effect until that day; and therefore, there is no foundation for the point made by the counsel for the appellant; that the insolvent laws of Maryland were suspended in their operation by the Bankrupt Act of the United States, at the period when the proceedings of Rogers & Frick under those laws were commenced and consummated. At that time, the Bankrupt Act was not in force, and there could have been no conflict between the National and State legislation upon this subject.

"In *Ex parte Eames*, 2 Story Rep. 325, Mr. Justice Story said:

" 'That as soon as the Bankrupt Act went into operation, in February, 1842, it *ipso facto* suspended all action on future cases, arising under the state insolvent laws, where the insolvent persons were within the purview of the Bankrupt Act. I say future cases, because very different considerations would or might apply, where proceedings under any state insolvent laws were commenced, and were in progress before the Bankrupt Act went into operation. It appears to me, that both systems cannot be in operation, or apply at the same time to the same persons; and where the State and National legislation, upon the same subject, and the same persons, come in conflict, the National laws must prevail and suspend the operation of the State laws. This as far as I know, has been the uniform doctrine maintained in all the courts of the United States.' "

This decision seems to us more in consonance with correct

principles than the more recent cases above cited, and we follow it in preference to them.

The judgment is affirmed.

ALL CONCUR.