[No. 15729.    Department Two.    May 8, 1920.]

## THE STATE OF WASHINGTON, *on the Relation of W. W. Sherman, State Treasurer, Plaintiff,* v. E. F. BENSON, *as Commissioner. of Agriculture, Respondent.*[1]

STATUTES (67)—EXECUTIVE CONSTRUCTION. The courts are not bound by the construction of statutes by the administrative officers, even though approved by the law officers for a number of years.

SAME (68)—LEGISLATIVE CONSTRUCTION. The courts should give heed to legislative construction of prior acts.

SAME (45)—REPEAL OF SPECIAL BY GENERAL ACT. A special act is not repealed by a general act, contrary to the obvious legislative intent.

SAME (69)—CONSTRUCTION WITH REFERENCE TO OTHER STATUTES. General enactments do not apply in the interpretation of special statutes, and the functioning of state institutions under special acts is not generally affected by general restrictive laws governing the collection of revenues.

AGRICULTURE (3) — BOARDS AND OFFICERS — POWERS — STATUTES. Under the act of 1893, Rem. Code, § 3004, defining the powers of the state fair commission, and the act of 1913, Rem. Code, § 3000-6, providing that the commissioner of agriculture shall exercise all the powers vested in the state fair commission, the earlier special act was not impliedly repealed by the later general enactment, which transfers the control exactly as it was under the original act.

AGRICULTURE (1)—STATES (23-1)—COLLECTION AND CUSTODY OF FUNDS. Rem. Code, § 5029, requiring each state officer collecting money to transmit the same to the state treasurer each day, did not repeal the prior special act, §3009, providing that on the last Monday of October of each year, the state fair commissioners shall remit all moneys remaining in their hands, in view of the impossibility of conducting the state fair as a going concern without the application of receipts to the revolving fund provided for by the act.

Application filed in the supreme court January 15, 1920, for a writ of mandamus to compel the commissioner of agriculture to pay certain funds into the state treasury.  Granted.

[1]Reported in 189 Pac. 1000.

*The Attorney General* and *Glenn J. Fairbrook, Assistant,* for relator.

*Richards & Fontaine, Davis & Morthland,* and *Williamson & Luhman,* for respondent.

HOLCOMB, C. J.—The relator seeks a writ of mandate to compel the commissioner of agriculture to pay into the state treasury the balance of funds in his possession arising from entrance fees, concessions, advertising space, and other income of the state fair of Washington for the years 1918 and 1919.

In 1893, the legislature created the state fair of Washington and declared its object and purpose to be to promote and further the advancement of all agricultural, stock raising, horticultural, mining, mechanical and industrial pursuits in this state; and provided for exhibitions thereof at North Yakima (now Yakima) for at least six days annually, after the passage of the act. Laws of 1893, ch. 134, page 445. The act further provided that the state fair should be under the management and control of five commissioners known as the state fair commission, to be appointed by the governor with the advice and consent of the senate, and to hold office for four years from the date of their appointment, and until their successors were appointed and qualified. Rem. & Bal. Code, § 3003. It also provided for the organization of the commission within fifteen days after their appointment, and for meetings of the commission at specified times and places, and the giving of bond by each of the commissioners conditioned for the faithful performance of their duties. Rem. & Bal. Code, § 3004. It further provided that the state fair commission should take and have full control and management of the state fair as a state institution and the care of its property, and intrusted the commission with the entire direction of

its business and financial affairs, etc.; and that the
commission should have power to charge entrance fees,.
gate money, lease stalls, stands, restaurant sites, give
prizes and premiums, and do all things which by the
commission might be considered proper to conduct in
connection with a state fair not otherwise prohibited
by law.   Rem. & Bal. Code, § 3005.   Section 3008 pro-
vided that, on the last Monday of October of each year,
the state fair commission should prepare  and trans-
mit to the governor of the state a full financial state-
ment, signed by the president and treasurer and at-
tested by the secretary, of all funds received and dis-
bursed, and also a report signed by the president and
secretary of all the assets and liabilities of the state
fair, a full and detailed account of all its transactions,
statistics and information gained; and required the
secretary to constantly collect all kinds of information
calculated to instruct the agricultural and industrial
classes, and to have the same embodied in such report.
Section 3009 provided that all vouchers for the expen-
ditures of money under the provisions of the act should
be signed by the president and at least two other mem-
bers of the state fair commission and attested by the
secretary; and that the state auditor should, upon.
presentation of such vouchers, draw his warrant upon
the state treasurer for the payment of the same, and
the state treasurer should pay such warrant out of
any money on hand appropriated for the purposes in
the act set forth; and that all moneys remaining in the
hands of the treasurer of the commission on the last
Monday of October of each year should be paid in to
the state treasurer to the credit of the state fair fund,
to be subsequently drawn out as thereinbefore pro-
vided.    Section 3011 provided that no expenditure
should be made or indebtedness contracted by the com-
missioners in excess of the amount therein appro-

priated, and that any indebtedness so contracted should be void. In 1913, by chapter 60, page 196, Laws of 1913, the legislature created the department of agriculture, and provided, in § 6 thereof, that the commissioner (of agriculture) should have power and it should be his duty, among other things:

"(5) To exercise all the powers and perform all the duties now vested in and required to be performed by the state fair commission." Rem. Code, § 3000-6.

By § 14 of that act, all acts and parts of acts incorporated in the schedule contained in this section, and all acts and parts of acts in conflict with the provisions thereof, were repealed; and the schedule included, with reference to the state fair legislation, §§ 3003 and 3004, Rem. & Bal. Code, being the sections giving the management and control of the state fair to the five commissioners known as the state fair commission, and providing for their organization, meetings, giving of bonds, etc.

It is shown by the petition that, at the time of the opening of the 1919 state fair, respondent Benson, as commissioner of agriculture, had in his control and custody approximately $13,000 remaining from the conduct of the fair for the year 1918, and that he received from the income of the 1919 fair approximately $40,000; that he expended approximately $38,000 of this amount, and there remains a balance of approximately $16,000 in his possession at this time. It is the contention of the respondent that he is authorized to expend all income of the state fair for the payment of expenses incurred in its operation, in addition to the amount appropriated by the legislature. The relator, supported by the *Attorney General*, contends that these collections must be deposited in the state treasury to be paid out under proper appropriation acts.

Relator contends that the only language in the act of 1893 creating the state fair which could be construed as permitting the expenditure by the state fair commission of the collections of the operation of the fair, without the same having been paid into the treasury and appropriated by the legislature, are the authorizations of § 3005 for the commission to "do all things which by said commission may be considered proper to conduct in connection with a state fair not otherwise prohibited by law," and § 3009, providing "that all moneys remaining in the hands of the treasurer of the commission on the last Monday of October of each year shall be paid in to the state treasurer to the credit of the state fair fund, to be subsequently drawn out, if required, as hereinbefore provided. . . ."

It is conceded that, since Rem. & Bal. Code, § 3002, permits the holding of the fair as late as the second Monday of October, and the last Monday of October being specified in Rem. & Bal. Code, § 3009, for remitting all moneys remaining in the hands of the treasurer of the commission to the state treasurer to be credited to the state fair fund, to be drawn out as in the original act prescribed, might support that contention but for the fact that, at the time of the enactment of that section, there was not in force Rem. Code, § 5029, requiring each state officer, or other person authorized by law to collect or receive moneys belonging to the state or to any department or institution thereof, to transmit the same to the treasurer of the state each day; and that, further, by the provisions of the act creating the department of agriculture (Rem. Code, § 3000-12), all moneys collected as fees or otherwise by the department of agriculture shall be paid into the state general fund.

The *Attorney General,* upon the request of the Honorable J. H. Perkins, commissioner of agriculture,

in July, 1913, for an opinion as to the operation of the
state fair fund, advised the commissioner of agricul-
ture that § 12 of chapter 60, Laws of 1913, p. 200, re-
quired all moneys collected by the commissioner to be
paid into the state general fund, and that the use of
the state fair receipts as a revolving fund was not
authorized by law.

Apparently the advice of the *Attorney General* was
not followed by the commissioner at that time, and
from the allegations in the petition before us, was
ignored in 1918 and 1919. But the *Attorney General*
contends that, notwithstanding the executive construc-
tion of the provisions of the acts in question as creat-
ing a state fair revolving fund, the commissioner of
agriculture is without authority to so dispose of it
under the provisions of §§3000-12 and 5029, Rem. Code.

We grant that we are not to be bound by the con-
struction of the acts in question by the administrative
officers, even though for a number of years, and even
though it had been approved by the law officers of the
state rather than disapproved. *Wendt v. Industrial
Insurance Commission,* 80 Wash. 111, 141 Pac. 311, 5
N. C. C. A. 790. But we should give some heed to the
legislative construction of these prior acts (*Swigart
v. Baker,* 229 U. S. 187); and it appears that, even
from the time of the creation of the department of
agriculture in 1913, at that session and at every sub-
sequent session since, until and including the session
of 1919, the legislature has made a separate appro-
priation to the state fair from the appropriation to
the department of agriculture for the maintenance of
the institution, payment of salaries, and the like.
Neither did the legislature, when creating the depart-
ment of agriculture, repeal any of the provisions relat-
ing to the state fair, save and except those heretofore

mentioned, the creation of the state fair commission and its management; nor is the state fair included in any of the four divisions created within the department of agriculture by the act of 1913. The act of 1913 also specifically provided that the horticultural fund, theretofore existing as a separate revolving fund controlled by the horticultural commissioner, should be paid into the state general fund, and omitted to so provide for the state fair fund. Rem. Code, § 3000-13.

The commissioner of agriculture is, by the act of 1913, creating his department, granted the power and charged with the duty: "To exercise all the powers and perform all the duties now vested in and required to be performed by the state fair commission." And the state fair commission was, by the act creating the state fair of Washington, charged with the duty of promoting and furthering the advancement of all agricultural, stock-raising, horticultural, mining, mechanical and industrial pursuits in this state, and required to provide for an *annual* fair or exhibition, upon the fair grounds owned by the state, of all the industrial products of the state, on dates to be fixed not earlier than the third Monday of September nor later than the second Monday of October of each year, and to continue for at least six days, and to transmit all funds remaining in their hands on the last Monday of October of each year to the state treasurer to the credit of the state fair fund. These provisions are still in force and these duties incumbent upon the state agricultural commissioner instead of the former state fair commission. It is also still incumbent upon the state agricultural commissioner, as manager of the state fair, to care for all the property of that institution and to keep the same in complete and continual repair.

We have uniformly and consistently adhered to the principle that we will adopt that interpretation of

legislation which will give force and effect to the obvious legislative intent; and we have heretofore held that special statutes will not be repealed by general enactments (*State ex rel. Johnson v. Clausen,* 51 Wash. 548, 99 Pac. 743); nor will general enactments apply in the interpretation of special statutes (*State ex rel. Washington Public Service Co. v. Superior Court,* 86 Wash. 155, 149 Pac. 652); and that the functioning of public institutions of the state operating under special statutes is not generally affected by general restrictive laws governing the revenue collecting bureaus of the state. *State ex rel. Johnson v. Clausen, supra; State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1; *State ex rel. Sherman v. Pape,* 103 Wash. 319, 174 Pac. 468; *State ex rel. Thompson v. Powell,* 108 Wash. 561, 185 Pac. 573.

In view of these considerations, we conclude that the act of 1893, creating and defining the powers of the state fair commission, is still in force, being a special statute not impliedly repealed by subsequent general enactment, and that the transfer of the control of the state fair to the commissioner of agriculture, by the act of 1913, transfers the control exactly as it was under the original act in the state fair commission, and that the legislature, by its several appropriations, evidenced that such was its intent.

We are satisfied it was not the intention when enacting Rem. Code, § 5029, requiring each state officer or other person authorized by law to collect or receive moneys, to transmit the same to the treasurer of the state each day, to apply the provisions thereof to the operations of the state fair under the special legislation creating and governing it. The lawmakers must have been sensible of the impossibility of operating the state fair as a going business concern and requiring the proceeds of each day to be turned into the state

treasury daily, and were content with the special legislation theretofore in force requiring only that the balance in the hands of the state fair commissioners be turned into the state treasury on the last Monday of October each year.

Our attention has been called to § 1, chapter 8, page 13, Laws of 1907, which reads:

"All moneys now in or that may be paid into the state treasury from any and all sources, except moneys received from taxes levied for specific purposes and excepting the several permanent and irreducible funds of the state, and the moneys derived therefrom, shall be paid into and become a part of the general fund of the state."

This act, of course, abolishes all such special funds as the state fair fund, but our reasoning in respect to the general legislation concerning the operation of the state fair applies in part also to this statute. While it directs the payment of moneys received from the state fair into the general fund of the state, the other special legislation requiring it only to be done on the last Monday in October of each year is still in force, not being expressly or impliedly repealed.

The biennial appropriations by the legislature for the support of the state fair are to be deemed appropriations in aid of the state fair, together with, and in addition to, the income derived from the operation of each annual fair. The income is to be considered an operating fund, and it, together with the appropriations made by the legislature, is to be accounted for and any balance paid back into the general fund on the last Monday of October of each year. This results in the state fair funds being remitted annually on the last Monday of October, but the appropriation is for the biennium and should be withdrawn as provided by law from the appropriation for the biennium, includ-

ing the income of the annual exhibitions, as other biennial appropriations are drawn upon. In other words, while it should be paid into the general fund, it should be paid in to the credit of the state fair, and when required should be drawn upon for the benefit of the state fair, in the same way as other biennial appropriations for any department are drawn upon. We therefore conclude that the writ prayed for by relator should be granted, but the operation of the fund should be as stated herein.

Writ granted.

TOLMAN, BRIDGES, and MOUNT, JJ., concur.