[No. 27834. *En Banc.* December 10, 1940.]

THE LONGVIEW COMPANY et al., *Appellants,* v. J. J. LYNN et al., *Respondents and Cross-appellants.*[1]

[1]Reported in 108 P. (2d) 365.

508

*Donworth, Paul & Donworth* and *Frank S. Hallett, Jr.* (*Lombardi, Robertson, Fligg & McLean,* of counsel), for appellants.

*Preston, Thorgrimson & Turner,* for respondents and cross-appellants Lynn *et al.*

*Raymond G. Wright* and *Clark A. Eckart,* for respondent and cross-appellant Niblett.

BEALS, J.—Plaintiffs, residents and taxpayers of the city of Longview, on their own behalf and on behalf of all others similarly interested, instituted this action for the purpose of obtaining a judgment declaring and establishing the status and legal rights of the parties to this action, with regard to certain local improvement district bonds issued by the city of Longview. The city of Longview, together with its mayor and treasurer, were named as defendants, together with J. J. Lynn, J. H. Edwards, and F. J. Zeithamel, Jr., as members of a bondholders protective committee, and Henry G. Niblett, who, it is alleged, was the owner of several local improvement district bonds which had also been issued by the city.

After the issues were established by the pleadings, the parties signed a written stipulation of facts, and the case was heard upon this stipulation, no oral evidence having been introduced.

The statement of facts herein consists of preliminary statements of counsel, the agreed statement of facts above referred to, memorandum opinion of the trial court, and a brief record of proceedings had before the court after the filing of the memorandum opinion, together with a short additional statement of stipulated facts, all certified by the trial court as containing all material facts, matters, and proceedings occurring in the cause not already a part of the record.

As its findings of fact, the court adopted the agreed statement of facts, and entered therefrom its conclusions of law, followed by a judgment generally in favor of the defendants, establishing the respective rights of the parties to the action. From this judgment, plaintiffs have appealed; defendant Niblett has cross-appealed; defendants Lynn, Edwards, and Zeithamel have joined in a cross-appeal; and defendants city of Longview, and C. C. Tibbetts and F. S. Witt as its mayor and treasurer, have also cross-appealed. In this opinion, we shall refer to plaintiffs as appellants, cross-appellant Niblett as Niblett, cross-appellants Lynn, Edwards, and Zeithamel, as respondents or the committee, and cross-appellants city of Longview, Tibbetts, and Witt, as the city.

The questions of law presented on this appeal concern the claims, some of them in conflict one with others, of the holders of local improvement bonds issued by the city of Longview, and the rights and obligations of the city of Longview and its officers in connection with the local improvements bonds which the city had issued.

Prior to April 7, 1926, the city established its local

improvement districts Nos. 11, 12, 13, 14, 15, 17, 18, and 19. District No. 11 was established by ordinance December 19, 1925, which ordinance provided for the condemnation of a complete storm and sanitary sewer system, the expense to be met by the issuance of bonds which were to be retired by the collection of special assessments levied against the property within the district. Pursuant to the ordinance, the city instituted condemnation proceedings, which resulted in a judgment condemning the property. The city accepted the amount awarded, and the owner of the condemned property accepted the bonds of district No. 11, which were issued in an amount equal to the award in the condemnation proceeding.

Local improvement districts Nos. 12, 13, 14, 15, 17, and 18 were established by ordinances at different times between December 19, 1925, and March 15, 1926. These districts were established for the purpose of improving streets by the installation of sewers and paving.

District No. 19 was created by ordinance April 5, 1926, and provided for improvements consisting of the following: (1) A bridge over the Cowlitz river and the approaches thereto; (2) light standards and necessary wiring therefor; (3) an overhead or subway crossing of a railway right of way and yards; and (4) paving and draining. Separate bids were called for on each of the four improvements included in the ordinance.

It was agreed between the city and the successful bidders in all the local improvement districts above referred to, that the contract prices of the improvements should be paid by the issuance of local improvement district bonds, which the contractors respectively agreed to buy and pay for in cash or in warrants of the respective improvement districts, to be issued by

the city as the work progressed. As to all of the districts, except subdivisions (1) and (2) of district No. 19, the improvements had been ordered and bids accepted and the contracts awarded and signed prior to April 7, 1926. Bids for the work above referred to as (1) and (2) of district No. 19 were filed with the city prior to April 7, 1926, and were accepted by the city on that date.

The local improvement district bonds in all of the districts above referred to were issued subsequent to April 7, 1926, in the total amount of $1,682,008.45. Of this amount, at the time of trial of this action, there remained unpaid bonds in the principal sum of $896,000, together with unpaid interest thereon in the sum of $71,640. The bonds were all past due, both as to principal and interest.

May 1, 1937, defendants Lynn, Edwards, and Zeithamel joined in the execution of a bondholders protective agreement, acting on their own behalf, and on behalf of approximately two hundred fifty other bondholders, in an attempt to collect something over six hundred thousand dollars face value of the improvement bonds. The committee composed of the three men named has legal title to all of these bonds and the interest coupons attached thereto. The bonds, being past due, have been presented to the city and its treasurer, and payment thereof demanded. Payment was refused for the reason that there was no money in the local improvement district funds, and no money in the bond redemption fund. In presenting the bonds, the committee stated its claim that the bonds were entitled to be paid out of the city's local improvement guaranty fund, and warrants on that fund were demanded for as many bonds as permitted by law, the claim being made that, from year to year, other warrants on the guaranty fund should be issued on account of

the bonds. The demands both for payment and warrants were refused.

The rights of Mr. Niblett, as the owner of bonds issued by three other local improvement districts, Nos. 21, 22, and 23, were also adjudicated in this action. These districts were established, respectively, for the purpose of installing sewers, sidewalks, and paving. In each district, the work was ordered after June 8, 1927, and local improvement district bonds, with interest coupons attached, were issued in payment of the work, in the total amount of $36,067.69, of which there are now due and unpaid bonds in the principal sum of twenty-five thousand dollars.

In an action brought by Niblett, a judgment was rendered May 26, 1938, establishing these bonds as valid obligations of the respective districts which issued them, and of the local improvement guaranty fund of Longview, the judgment also directing that a writ of mandate issue, requiring the city of Longview to levy a tax in the year 1938 upon all real property within the city, in the amount of $1,250, plus an amount equal to five per cent of any due and unpaid interest coupons, and also requiring the levy by the city in succeeding years of a similar tax, for the benefit of the guaranty fund. In accordance with the writ of mandate which was issued, the city levied taxes; and May 6, 1939, Niblett presented certain of his bonds and coupons and demanded that the $1,600 then in the guaranty fund be paid to him on account thereof. Prior to this demand, the committee had demanded payment from the guaranty fund of the other bonds above referred to, and the city refused to pay the money to either bondholder, the money being retained in the fund, subject to final determination of this action.

The amount of the total assessed valuation of the

land within the city of Longview was shown as of April 10, 1929, together with total indebtedness of the city. From these figures, it appears that the amount of the city's indebtedness, subtracted from one and one-half per cent of the assessed valuation of the property within the city, leaves $5,849.83, and that the city was within the latter amount of its constitutional debt limit.

Appellants contend that chapter 183, Laws of 1925, Ex. Ses., p. 551, providing for the establishing by cities and towns of a fund for the purpose of paying local improvement bonds and warrants, should be declared inapplicable to the bonds of local improvement districts Nos. 11, 12, 13, 14, 15, 17, 18, and 19 of the city, or to any district in which the improvement was ordered prior to the effective date of that act, and that it be adjudged that, under the statute referred to, only a single levy of five per cent of the amount of outstanding bonds and warrants protected by the statutes be made, and that the law does not contemplate a five per cent levy for the benefit of the fund each successive year until the bonds be liquidated.

Niblett contends that the act of 1925 above referred to should be held inapplicable to the city's local improvement districts Nos. 11, 12, 13, 14, 15, 17, 18, and 19; that the act of 1925 required only a single tax levy of five per cent of the total amount of outstanding bonds and interest; that the city should be required to comply with the decree of the superior court above referred to, and, under the act of 1927, continue to levy annual taxes in accordance therewith. He also contends that the fund accruing from such taxes should be declared to be a special fund for the payment solely of outstanding obligations of districts Nos. 21, 22, and 23.

The trial court held that the guaranty fund act of 1925 applied to all local improvement district bonds and warrants issued after its effective date, regardless of when the improvements were ordered, and that the fund thereby established was for the benefit of, and available to, the bonds of districts Nos. 11, 12, 13, 14, 15, 17, 18, and 19, subject only to the constitutional limitation upon the indebtedness of the city. The court also held that the guaranty fund act of 1925, as so construed, does not violate any portion of the constitution of this state; that no term or provision of the various ordinances establishing the districts rendered the guaranty fund act of 1925 inapplicable; and that no act of any party hereto had had that effect. The court also held that the city should issue to the committee warrants on the local improvement guaranty fund in the amount of $5,849.83, and should levy and collect general taxes sufficient to pay such warrants; that the committee is entitled to payment of its bonds prior to the payment of the bonds owned by Niblett; and that all outstanding bonds of districts Nos. 11, 12, 13, 14, 15, 17, 18, and 19, except as to the amount of $5,849.83, constitute obligations in excess of the city's constitutional debt limit, and are and shall remain uncollectible.

The foregoing rulings were embodied in the judgment of the court. Appellants complain of the trial court's holding that respondents' bonds are within the protection of the guaranty fund. Niblett, who is both appellant and cross-appellant, in the former capacity joins with appellants in their attack on the judgment, and as cross-appellant, complains of the trial court's ruling as to the effect of the judgment in the mandamus action above referred to, which Niblett had brought against the city, and also complains of the trial court's ruling establishing the relative rights of the holders

of bonds issued under the 1925 act, and those issued under the act of 1927. Respondents cross-appeal from that portion of the judgment which declares that the act of 1925, and the guaranty fund established thereby, are subject to the constitutional debt limit of the city, thus limiting the relief granted to the bondholders to the sum of $5,489.83, and also complains of that portion of the judgment which declares all outstanding bonds of districts Nos. 11, 12, 13, 14, 15, 17, 18, and 19 in excess of the amount last referred to, to be debts uncollectible, as beyond the constitutional debt limit of the city.

Generally speaking, the questions presented on this appeal may be stated as follows:

(1) Does the guaranty fund act of 1925 apply to bonds issued for improvements ordered prior to the effective date of that act?

(2) If the act by its terms was intended to apply to such bonds, is the act so far unconstitutional?

(3) Are the guaranty fund statutes subject to Art. VIII, § 6, of the state constitution, limiting a municipal corporation's indebtedness to one and one-half per cent of the assessed property of the municipality?

(4) To what extent is the general taxing power of a city available for the purpose of maintaining a guaranty fund; in other words, does the law require merely a single tax levy in the amount of five per cent of the outstanding bonds or warrants, or does the statute provide that a levy in this amount shall be made each year, so long as unpaid bonds are outstanding?

(5) Finally, the conflicting claims and rights of the parties to this action must be adjudicated.

The first question to be considered is whether chapter 183, Laws of 1925, Ex. Ses., p. 551, applies to bonds issued for improvements ordered prior to April 7, 1926,

the effective date of the act. The pertinent portions of §§ 1 and 2, pp. 551, 552, read as follows:

"Section 1. There is hereby established for each city and town in the State a fund for the purpose of guaranteeing, to the extent of such fund and in the manner hereinafter provided, the payment of its local improvement bonds and warrants issued to pay for any local improvement ordered subsequent to the effective date of this act . . .

"Section 2. Such fund shall be designated 'Local Improvement Guaranty Fund.' For the purpose of maintaining such fund every city or town issuing local improvement bonds or warrants after April 7, 1926, shall be deemed and held to have pledged to the fund a tax credit of the city or town in an amount equal to five per cent of the bonds or warrants so issued."

The quoted portion of § 1 is perfectly plain and free from ambiguity. It sets up a fund for each city and town in the state for the purpose of guaranteeing payment of local improvement district bonds thereafter to be issued in payment for improvements ordered after April 7, 1926. Section 2 provides for the maintenance of the fund by a pledge of the "tax credit" of the city in an amount equal to five per cent of the bonds or warrants issued after April 7, 1926. The words "such fund," quoted in § 2, beyond question apply to the "fund" established by § 1, which fund the legislature established by § 1, for the purpose of guaranteeing payment of bonds and warrants issued in payment for improvements ordered subsequent to April 7, 1926.

So far, the intent of the statute cannot be disputed. The difficulty arises because § 2 provides that the tax credit to be pledged to the fund shall be in an amount equal to five per cent of local improvement district bonds or warrants issued after April 7, 1926, without regard to whether the improvements had been ordered prior or subsequent to that date. The statute, then, by its terms establishes a broader base for the measure of

contribution to the fund than the guaranty for the protection of the bonds and warrants, as bonds or warrants issued for improvements ordered prior to April 7, 1926, if issued after April 7, 1926, must be considered in raising money by taxation for the benefit of the fund, while by the express terms of § 1 of the act, these bonds and warrants do not share in the benefits of the fund.

Strictly speaking, there is no conflict whatever between §§ 1 and 2. It may not seem logical that, for the purpose of maintaining the fund, bonds and warrants which cannot benefit from the fund should be considered in establishing the amount of the tax levy to be made, but unless some constitutional right be infringed, the question is one for legislative determination. Some reason for the legislative action may be imagined, as it might reasonably be contended that a city which has outstanding unguaranteed bonds should provide a greater security for later guaranteed bonds, as the improvements which resulted in the two issues might overlap, thereby depreciating the security of the later issue.

Section 1 of the act definitely and positively states its purpose. No statement of purpose is found in § 2, that section merely prescribing the means by which the fund established in § 1 shall be maintained. By § 1, the legislature clearly stated the purpose of the act, and the legislative purpose should not be enlarged by judicial construction, unless such a construction be absolutely required.

In this connection, other legislation should be considered. The first guaranty fund act was passed by the legislature by chapter 138, Laws of 1917, p. 576. Section 1 of that act, p. 576, reads as follows:

"Any city of the first class may, by ordinance, create a fund for the purpose of guaranteeing, to the extent of such fund and in the manner hereinafter provided, bonds issued against local improvement districts for

the payment of local improvements therein." Rem. Rev. Stat., § 8986 [P. C. § 1066].

· This section clearly states the purpose of the statute and defines the scope of the guaranty therein provided, such guaranty apparently protecting all bonds, whether issued before or after the passage of the act.

By chapter 141, Laws of 1923, p. 454, the legislature again spoke upon this subject. Section 1 of that act, p. 454, reads in part as follows:

"Every city and town may immediately create a fund for the purpose of guaranteeing to the extent of such fund and in the manner hereinafter provided, the payments of its local improvement bonds issued subsequent to the effective date of this act."

Like the earlier act, the creation of a guaranty fund was left optional with the municipalities, but the privilege of establishing such a fund was extended to all cities and towns. The later act limited the protection of the guaranty fund to bonds issued subsequent to the effective date of the act. The act contains no provision concerning the date the improvements were ordered, the date of the issuance of the bonds being controlling.

By the 1925 act, the establishment of a fund was made mandatory, and the protection of the act was further limited to bonds issued for improvements ordered subsequent to the effective date of the act. The statute of 1917, then, protected all bonds; that of 1923 protected bonds issued subsequent to the effective date of the act; while that of 1925 protected only bonds issued for improvements ordered subsequent to the effective date of the act, the protection extended by the law being progressively limited.

By chapter 209, Laws of 1927, p. 308, the legislature again spoke upon this subject. By § 1 of this statute, p. 308, the first section of chapter 141, Laws of

1923, was amended, the first portion of the section as amended reading in part as follows:

"There is hereby established for each city and town in the State a fund for the purpose of guaranteeing, to the extent of such fund and in the manner hereinafter provided, the payment of its local improvement bonds and warrants issued to pay for any local improvement ordered; (a) In any city of the first class having a population of more than three hundred thousand, subsequent to the effective date of this act; (b) In any city or town having created and maintained a guaranty fund under chapter 141 of the 1923 Session Laws of Washington, subsequent to the date of establishment of such fund; (c) In any other city or town, subsequent to April 7, 1926." Rem. Rev. Stat., § 9351-1 [P. C. § 1071-1].

There can be no question but that the legislature, by the 1927 amendment, intended to limit the benefit of the guaranty fund to bonds and warrants issued in connection with any local improvement ordered either subsequent to the effective date of that act, subsequent to the creation of the guaranty fund, if the municipality had established one under the act of 1923, or subsequent to April 7, 1926, the effective date of the act of 1925. In other words, the legislature clearly showed its intention to make the ordering of the improvement the decisive date, and not the issuance of the bonds or warrants.

We shall now consider the rules of statutory construction to be applied to the question now under consideration. We shall first discuss the question of whether or not, in construing the act of 1925, the subsequent act of 1927 may be considered as throwing some light upon the legislative intent.

In the early case of *New Whatcom v. Roeder,* 22 Wash. 570, 61 Pac. 767, is found the following:

"Not only may contemporaneous and prior statutes be considered in construing a given act, but a subse-

quent statute may often aid in the interpretation of a prior one. . . . In construing a given act, the meaning of words and terms as used therein may be gathered from the consideration of other acts *in pari materia* in which such words or terms were also used. That construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole."

In *State ex rel. Oregon R. & N. Co. v. Clausen,* 63 Wash. 535, 116 Pac. 7, this court said:

"Courts are not at liberty to speculate upon legislative intent when that body, having subsequent opportunity, has put its own construction upon its prior enactments."

In *State ex rel. Sherman v. Benson,* 111 Wash. 124, 189 Pac. 1000, the doctrine that legislative construction of prior acts should be noted was approved.

In *Whiting v. Seattle,* 144 Wash. 668, 258 Pac. 824, this court, summarizing some of its earlier decisions, said:

"This court has said that not only contemporaneous and prior statutes, but a subsequent statute, may often aid in the interpretation of a prior one (*New Whatcom v. Roeder,* 22 Wash. 570, 61 Pac. 767); that we should give some heed to the legislative construction of prior acts (*State ex rel. Sherman v. Benson,* 111 Wash. 124, 189 Pac. 1000); and that a subsequent act, evidently passed to aid in the interpretation of a prior act, should be given consideration (*American Savings Bank & Trust Co. v. National Surety Co.,* 104 Wash. 663, 177 Pac. 646). See, also, *Haynes v. Seattle,* 87 Wash. 375, 151 Pac. 789."

In the recent case of *State ex rel. Washington Mutual Sav. Bank v. Bellingham,* 183 Wash. 415, 48 P. (2d) 609, the rule was again stated in the following language:

"In considering different statutes enacted by the same legislative authority, all relating to the same

subject matter, the entire sequence should be considered in placing a judicial construction upon any one of the acts. This rule is well stated in 59 C. J. 1042, title Statutes, § 620."

In the case of *State ex rel. George v. Seattle,* 184 Wash. 560, 52 P. (2d) 360, we said:

"It is true that, where the legislature has put its positive construction upon a statute, whether done contemporaneously or by later enactment, such construction will control."

From the foregoing, it appears that this court has approved the rule followed in many jurisdictions, that subsequent legislation may be considered, at least to some extent, in interpreting prior laws.

A study of the foregoing legislative enactments clearly shows a change of legislative intent. By the statute of 1917, all local improvement district bonds were within the protection of the guaranty, regardless of when the improvement was ordered or the bonds issued. By the statute of 1923, the benefits of the guaranty were limited to bonds issued subsequent to the effective date of the act. By § 1 of the statute of 1925, the legislative intent to limit the guaranty to bonds issued to pay for improvements ordered subsequent to the date of the act is clearly stated in the first section thereof. As above noted, the second section establishes a different rule for the levy of the tax which shall produce the money for the fund, but by the first section of the statute of 1925, above quoted, the legislative intent is positively stated in plain language. By the first section of the act of 1927, *supra,* the legislative intent to make the guaranty extend only to bonds issued for improvements ordered subsequent to April 7, 1926, is clearly expressed. By § 2 of the act of 1927, p. 309, it is provided that the levy

" . . . in any year shall not be more than sufficient to pay the outstanding warrants on said fund

and to establish therein a balance which combined levy in any one year shall not exceed five per centum of the outstanding obligations thereby guaranteed." Rem. Rev. Stat., § 9351-2 [P. C. § 1071-2].

In the case of *State ex rel. Washington Mutual Sav. Bank v. Bellingham, supra,* we expressed the view

" . . . that the act of 1927 interprets the act of 1925 by making the effective date of the former act, as to cities in the same situation as is appellant, April 7, 1926, on which date the act of 1925 became effective."

The doctrine that a later statute may be considered in interpreting one previously enacted, is supported by Black on Interpretation of Laws (2d ed.), 306, § 95; 59 C. J. 1042, § 620; and our opinions in the cases of *State v. Youngbluth,* 60 Wash. 383, 111 Pac. 240, and *State v. Herr,* 151 Wash. 623, 276 Pac. 870. In construing the statute of 1925, with reference to cities which had not elected to set up any guaranty fund, either under the act of 1917 or that of 1923, in which class is respondent city of Longview, the act of 1927 is helpful as interpreting that of 1925, and should be considered for that purpose.

We shall now consider the case of *Collins v. Bucoda,* 191 Wash. 242, 70 P. (2d) 1062, in which was presented the same question which we are now considering. This is clear from the statement of the question contained in the case cited, as follows:

"The general question presented is whether bonds, issued subsequent to the effective date of the statute, for an improvement which was ordered prior thereto, come within the provisions of the act."

The opinion, after quoting the first two sections of the act of 1925, holds that they are in irreconcilable conflict, the majority of the court being of the opinion that, while the work was ordered prior to the effective date of the act of 1925, by reason of the fact that the

bonds were issued subsequent thereto, they were entitled to the protection of the guaranty fund. In reaching this conclusion, the majority were also of the opinion that, in construing the act of 1925, the act of 1927 could not be considered. In support of this conclusion, several authorities are cited, but while these authorities support the rule laid down, it is evident from the decisions of this court above cited that a different rule has been followed in this jurisdiction.

In the *Bucoda* case, the view was also expressed that the 1917 and 1923 statutes are in direct accord with § 2 of the act of 1925, and that by § 2 of the later act, "the legislative authority was simply carrying forward what, in effect, were the provisions of the two prior acts." In reaching this conclusion, it would seem that the majority compared the first section of both the 1917 and 1923 acts with § 2 of the 1925 act.

No proper basis for comparing the first sections of the prior acts with the second section of the later act exists. Section 1 of the later act might properly be compared with the first sections of the prior acts, but the second section of the later act accomplishes an entirely different purpose. By the first sections of the three acts, the creation of a guaranty fund was provided for, and the scope of the guaranty was defined by describing the bonds to be protected thereby. The second section of the 1925 statute does not purport to define any such thing, but provides for the levy of taxes for the benefit of the fund. The second section, therefore, is not comparable with any section of a similar law defining the extent of the guaranty. Neither of the two earlier acts contains any section at all comparable to § 2 of the third act. By this section, an entirely new element was introduced into the guaranty fund law. Both the prior laws were optional. By the third statute, for the first time the establish-

ment of a guaranty fund was made mandatory, save as to a limited class of cities. The pledging of a tax credit in aid of the fund was not mentioned in either of the earlier acts.

To follow respondents' argument that the act of 1925 provides a guaranty fund for all bonds issued subsequent to April 7, 1926, regardless of when the improvement was ordered, would amount to a holding that the act of 1925 provided the same guaranty as did the act of 1923, thereby disregarding the amendment made by the statute of 1925, and giving no effect to the different language used in the later act.

In construing a statute which amends or supplements a prior act, it will be assumed that some change in meaning was intended, and in the light of that principle, effect should be given to the amendment. 59 C. J. 1097, § 647; 25 R. C. L. 1051, § 276; Black on Interpretation of Laws (2d ed.), 574, § 165; *In re Eichler's Estate*, 102 Wash. 497, 173 Pac. 435; *In re Phillips' Estate*, 193 Wash. 194, 74 P. (2d) 1015. By its terms, the act of 1925 amended the statute of 1923. As above noted, this is also true of the act of 1927.

To hold that the statute of 1925 protects bonds issued for improvements ordered prior to the effective date of the act renders the statute obnoxious to Art. XI, § 12, of our state constitution, which section reads as follows:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

Under this section, the state legislature may not impose any tax upon a city or town for municipal

purposes. The setting up of a fund to guarantee local improvement district bonds and warrants is a municipal purpose. For the legislature to provide that a tax shall be levied upon the property of any municipal corporation for the purpose of guaranteeing bonds and warrants which were issued pursuant to contracts entered into by the municipality prior to the effective date of the act, constitutes a tax imposition by the legislature, contrary to the constitutional provision. The municipality had committed itself to the issuance of the bonds before the enactment of the guaranty fund law. As to later improvements, the municipality contracts for the same in view of the law and the legislative burdens imposed upon such contracts.

In this connection, respondents rely upon the case of *Hallahan v. Port Angeles*, 161 Wash. 353, 297 Pac. 149, in which it was held that the act of 1927 did not violate the constitutional provision above quoted, this court observing:

"The act, by its terms, does not apply to bonds or warrants issued to pay for any local improvement ordered prior to its effective date. Nowhere in the act is there any imposition of a tax upon the city, or the inhabitants thereof, but the act makes it a condition precedent to the ordering of a local improvement, and the payment thereof by local assessments, that the guaranty fund shall be created. The city may, or may not, order a local improvement, but, if it does, the assessment for the benefit of the guaranty fund must be made, and this is imposed by the city and not by the act of the legislature."

The case cited is not authority for holding that the act is constitutional, when considered in the light of the statute's application to bonds and warrants issued pursuant to contracts entered into prior to the effective date of the act of 1925.

Respondents contend that no tax is imposed by the

statute, citing *State v. Pierce County*, 132 Wash. 155, 231 Pac. 801, 46 A. L. R. 594, which case involved chapter 145, Laws of 1923, p. 466, an act relating to the admission of insane persons to state hospitals and providing that, in certain cases, the counties pay for the care and maintenance of such persons. It was contended that the charge against counties for maintenance of their harmless insane amounted to the imposition of a tax. The statute simply provided for the payment of certain expenses by the counties. In the case at bar, the act of 1925 provides that municipalities "shall be deemed and held to have pledged to the fund a tax credit" in a certain amount. It was properly held that the act relating to the payment for the maintenance of insane persons was not an imposition by the legislature of a tax upon counties. The case cited is not here controlling.

Respondents argue that, because the act of 1925 was passed by the house January 6, 1926, by the senate the following day, and approved by the governor January 18, 1926, the city of Longview was charged with knowledge of the enactment of the law, and that therefore all improvements ordered subsequent to January 18, 1926, were voluntarily ordered by the city, with knowledge that after April 7, 1926, the effective date of the.act, a tax would necessarily be imposed for the maintenance of the guaranty fund, and that therefore the tax was self-imposed by the city of Longview, within the rule laid down in the *Hallahan* case, *supra*.

It is the rule that a statute passed to take effect at a later date speaks from the time it becomes operative, and not from the time of its passage. In the case of *Skidmore v. Clausen*, 116 Wash. 403, 199 Pac. 727, this court quoted from 26 Am. & Eng. Ency. of Law (2d ed.), 565, as follows:

" 'A statute passed to take effect at a future day must be understood as speaking from the time it goes

into operation and not from the time of passage. . . . Before that time no rights may be acquired under it, and no one is bound to regulate his conduct according to its terms.' "

In the case of *State ex rel. French v. Seattle*, 187 Wash. 58, 59 P. (2d) 914, we said:

"The almost universal rule is that ordinances and statutes speak from their effective dates and not before."

The cases of *State ex rel. Atkinson v. Northern Pac. R. Co.*, 53 Wash. 673, 102 Pac. 876, and *State ex rel. Hardy v. Superior Court*, 155 Wash. 244, 284 Pac. 93, are to the same effect.

■ In connection with this phase of the case, some facts relative to local improvement district No. 19 should be noted. The contracts for the improvements ordered by the first and second subdivisions of this district were executed April 7, 1926, the day that the act of 1925 became effective. From the stipulated facts, it appears that the contracts for the portions of the work referred to were executed at three o'clock in the afternoon on the day mentioned, and the city became obligated on its contracts at that time.

A law becomes effective ninety days after the adjournment of the session of the legislature at which it was enacted, from which rule, of course, appropriation bills and emergency acts are excepted. The 1925 act did not become effective until midnight, April 7, 1926. Under these circumstances, the rule that the law does not take cognizance of fractions of days is not applicable. In this connection, it is proper to note that, as a preface to the Laws of the Extraordinary Session, 1925, the secretary of state placed the following:

"The Extraordinary Session of the Legislature of the State of Washington convened at 12 o'clock noon,.

November 9, 1925, and adjourned *sine die* on January 7, 1926, at midnight.

"All acts passed by said session and approved by the Governor, together with those which were permitted to become laws without his signature, take effect ninety days after adjournment, or 12 o'clock midnight, April 7, 1926, except relief bills, appropriations and other acts declaring an emergency."

█ It is also contended that the tax imposed is not for a municipal purpose, but was primarily intended for the general rehabilitation of the credit of the cities of the state, and to protect the interest of the state in its own financial credit, and in that of its cities. It is also argued that all the improvements with which we are concerned in this litigation were improvements primarily in the interest of the state, and for which the state had the right to levy taxes.

The improvements fall under the general classes of paving, sewers, and bridges. As to the classification of these improvements, the authorities are legion. Exhaustive annotations on the subject are found in 46 A. L. R. 609, and 106 A. L. R. 906. In 3 Dillon on Municipal Corporations (5th ed.), 2100, § 1293, is found the following:

"But a complete definition of a 'city purpose' is not possible in view of the immense variety of objects which have been found to be necessary to the health and welfare of modern municipalities. Each case must depend largely upon its own facts, and the meaning of these words must be evolved as successive cases arise by a process of exclusion and inclusion in judicial construction."

After careful consideration, we are of the view that the improvements here referred to cannot be classed as other than for city purposes.

Our conclusion upon the matters hereinabove discussed renders it unnecessary to consider the ques-

tion of whether the construction of the 1925 statute adopted in the *Bucoda* case renders that act unconstitutional for the further reason that, under that construction, it would impair the obligation of contracts, as forbidden by Art. I, § 10, of the constitution of the United States, and Art. I, § 23, of our state constitution.

It is argued that the *Bucoda* case was correctly decided, because the bonds there in question contained a provision to the effect that persons owning the bonds would enjoy the right of recourse to the guaranty fund. While this question was argued in the *Bucoda* case, it was not considered by this court in the opinion, and whether or not the case should have been decided in favor of the bondholders upon that ground cannot now be considered.

After careful consideration and reexamination of the authorities, we are convinced that the act of 1925 does not apply to local improvement district bonds issued for improvements ordered prior to its effective date. The decision of this court in the case of *Collins v. Bucoda, supra,* is therefore overruled.

As all the bonds here in question owned by Messrs. Lynn, Edwards, and Zeithamel, herein referred to as respondents or the committee, fall within this classification, it follows that, as to them, the decree appealed from must be reversed.

The bonds owned by Mr. Niblett, issued by districts Nos. 21, 22, and 23, stand upon an entirely different basis. Each of these districts was created by ordinance subsequent to June 8, 1927, the effective date of the 1927 guaranty fund act, and of course the bonds issued by the districts were likewise issued long subsequent to that date. In connection with these bonds, therefore, no question is presented as to the extent of the guaranty afforded by the act of 1925. Clearly,

the 1927 statute provides for recurring levies in aid of the guaranty fund. Whether or not the act of 1925 provides for more than one levy, is a question which need not now be determined.

In view of our holding that the bonds held by respondents are not entitled to any benefit under the guaranty fund act of 1925, the question of the limitation imposed by Art. VIII, § 6, of our state constitution, regarding municipal indebtedness, need not, as to those bonds, be considered. We are also of the view that, as to Mr. Niblett's bonds, no question under this constitutional provision is at this time presented, as the city of Longview, at the time of the entry of the decree herein, had not reached its constitutional debt limit. This question as to Mr. Niblett's bonds may arise at some future time, and we leave this question open, to be determined if and when it is presented.

The decree appealed from will be reversed, with instructions to proceed in accordance with the views herein expressed.

MILLARD, ROBINSON, SIMPSON, STEINERT, JEFFERS, and DRIVER, JJ., concur.

MAIN, J. (dissenting in part and concurring in part)— I dissent from that part of the majority opinion which overrules the case of *Collins v. Bucoda,* 191 Wash. 242, 70 P. (2d) 1062. As I view it, that case correctly construes the statute, and I adhere to it. I do, however, concur in the result. This case, on its facts, is clearly distinguishable from that case. In each of the ordinances ordering the improvement here involved, it was provided that the entire cost and expense of the improvement should be borne by, and assessed against, the property included in the assessment district therein created. In the contract between the city and the con-

tractor with reference to the bonds, there was a similar provision. In each of the bonds, there was this provision:

"Neither the holder nor owner of this bond shall have any claim therefor against said city, except from the special assessment made for the improvement for which said bond was issued, but his remedy in case of nonpayment shall be confined to the enforcement of such assessments."

Here is an express provision in the bond that the holder of the bonds shall look solely to the special assessment for the improvement, and under this provision he would not have any claim against the guaranty fund. For this reason, I concur in the result.

BLAKE, C. J., concurs with MAIN, J.