[No. 32976.   *En Banc.*   July 28, 1955.]

HOMER SNYDER, *Appellant,* v. GENERAL ELECTRIC COMPANY *et al., Respondents.*[1]

[1]Reported in 287 P. (2d) 108.

*Horrigan, Merrick, Peterson & Merrick,* for appellant.

*Moulton, Powell, Gess & Loney,* for respondents.

HILL, J.—This is an appeal from an order granting a new trial. Liability was conceded in a personal injury action, and the only issue submitted to the jury was the amount of damages. The verdict was for $2,412.50 for special damages and $39,944 for general damages. The trial court entered an interlocutory order providing that unless the plaintiff would agree to accept a reduction of the jury's verdict for general damages to $19,500, a new trial would be granted. The plaintiff refused to accept the reduction, and an order was entered granting a new trial, the trial court's reasons being stated as follows:

"IT FURTHER APPEARING TO THE COURT from the testimony introduced that the disability of the plaintiff's shoulder was fixed at approximately ten percent and that his permanent partial disability to his knee would, in all probability, be twenty-five to thirty percent, based upon one hundred percent of amputation at the knee, and   .   .   .

"IT FURTHER APPEARING TO THE COURT that the prospective loss in wages of $1.00 per hour, as testified to by witnesses

for the plaintiff, projected at that rate over the remaining work years of plaintiff, is not a just or true criterion of compensation for injuries such as are shown in this action, and that the verdict, if allowing $10,000.00 for pain and suffering as requested by plaintiff, allows at least $29,994.00 for a permanent disability of twenty-five to thirty percent of the leg based upon amputation at the knee, and ten percent impairment of the right shoulder, which total verdict under all the circumstances is so excessive as to constitute an injustice, and

"IT FURTHER APPEARING TO THE COURT that, although the verdict does not unmistakably indicate prejudice and passion on the part of the jury, in the opinion of the court, the total amount of the verdict under the circumstances indicates that undue significance was attached to the mathematical formula for damages as propounded by the plaintiff with the result that the verdict awarded by the jury is out of reasonable proportion to the injuries shown, is punitive in nature, and unjust to the defendants and that unless a new trial is granted an injustice will be done. . . ."

Appellant's first assignment of error is that the trial court granted a new trial on the ground that substantial justice had not been done, which ground was not included in the defendants' motion for a new trial.

We have always recognized and all our decisions have proceeded upon the principle that a trial court has the inherent power to grant a new trial if, in the exercise of its sound discretion, it is satisfied that substantial justice has not been done, even though in the past that was not listed by rule or statute as one of the grounds for a new trial. *Sylvester v. Olson* (1911), 63 Wash. 285, 115 Pac. 175; *Brammer v. Lappenbusch* (1934), 176 Wash. 625, 30 P. (2d) 947; *Coppo v. Van Wieringen* (1950), 36 Wn. (2d) 120, 217 P. (2d) 294. In *Sylvester v. Olson, supra,* we recognized that the power could be exercised *sua sponte.* In that case, a motion for a new trial was not timely made, but a new trial was nevertheless granted. We upheld that order on the basis that, in the absence of any motion, the inherent power of the trial court to grant a new trial where an injustice has been done cannot be denied.

In 1951, Superior Court Rule 16 was amended (34A Wn. (2d) 117) to enumerate the grounds on which "The

former verdict or other decision *may* be vacated and a new trial granted, *on the motion of the party aggrieved.*" (Italics ours.) For the first time in either rule or statute, "That substantial justice has not been done" was listed as one such ground. It is urged that since that rule became effective in its present form, a new trial cannot be granted by the trial court for that reason unless it is included in "the motion of the party aggrieved."

Appellant cites such cases as *Orme v. Watkins* (1954), 44 Wn. (2d) 325, 267 P. (2d) 681, in which the error assigned was the trial court's *failure to grant a new trial.* In such a case, an appellant can rely only upon the grounds which he brought to the attention of the trial court by his motion. See, also, *De Vall v. De Vall* (1911), 60 Ore. 493, 118 Pac. 843, 120 Pac. 13, which emphasizes the distinction between the situations when the trial court is satisfied with the verdict and when it feels that justice has not been done.

The Oregon statute construed in *De Vall v. De Vall, supra,* contained language very similar to that of Rule 16. In that case, although there was a motion to set aside the verdict, the trial court set it aside on a ground not assigned in the motion. The appellate court, after an exhaustive discussion of cases from other states, said (p. 500):

"Thus we see that, by virtue of the inherent power of the court, it has authority, on its own motion, or for causes other than those assigned in a motion, to set aside a judgment and grant a new trial, unless such power of the court has been limited by statute. The statute of Oregon (Section 174, L. O. L.), relating to motions for new trials, is in effect the same as that of Iowa, above quoted, namely:

" 'A former judgment may be set aside and a new trial granted on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party,' etc.

"It contains no limitation upon the power of the court to set aside a judgment and grant a new trial upon its own motion, and it was within the court's discretion to set the judgment aside, if error appeared in the record that did or might result in a miscarriage of justice. The court only sought to rectify its own error in giving the instruction mentioned, which instruction we must assume was erroneous, and this was within its power that the rights of the

litigant might be protected, and also in justice to the court, as responsible for the impartial administration of the law."

Rule 16 does not attempt to limit the inherent power of the superior courts to grant new trials because substantial justice has not been done; it does not say that the courts may not exercise their inherent power *sua sponte*. It neither confers any power upon the superior courts that they did not already inherently possess nor attempts to restrict them in the exercise of their inherent power, except to make the exercise of that power subject to review by this court under certain conditions, just as any other exercise of a discretionary power would be. The rule does list certain causes for which a new trial may be granted "on the motion of the party aggrieved." Our holding, therefore, is that Superior Court Rule 16 does not restrict the inherent power of the superior courts to grant new trials on the ground that substantial justice has not been done, even though that ground be not enumerated in the motion for a new trial and even if there be no motion for a new trial.

It does not follow from such a holding, however, that the order granting a new trial should be affirmed. The other assignments of error raise a further question: It being conceded that the trial court had the inherent power to grant a new trial on the ground that substantial justice had not been done, do the reasons of law and fact given by the trial court in its order granting the new trial furnish an adequate basis for the action taken, and, if not, does the order constitute an abuse of discretion?

It should be noted that the reasons given by the trial court do not suggest that there is anything outside the record that would warrant the granting of a new trial; hence this is precisely the type of case which we indicated in *Coppo v. Van Wieringen, supra*, should be subject to review by this court. It should also be noted that, while the trial court was convinced that the general damages allowed were excessive, it negatived any idea that they were so excessive as to indicate unmistakably the existence of passion or prejudice on the part of the jury.

The trial court's reasons as to why justice was not done by the verdict in this case, as stated in its order which we have quoted, may be summarized as follows: (1) The damages are disproportionate to the disabilities sustained; (2) the jury based its verdict upon or attached undue importance to a formula based upon testimony that the plaintiff would, as a result of his disability, be capable of earning one dollar an hour less than if he had been able to continue his employment as a heavy-duty mechanic. The reasons given are definite and comply with Rule 16. The question remains whether they are sufficient to justify the action taken.

The trial court stated in its order that, all that was asked for pain and suffering ($10,000) being deducted, the remaining $29,994 allowed for general damages must have been based upon a reduction of one dollar an hour in appellant's earning capacity. Appellant was at the time of trial forty-four years of age. The application of any such formula based upon a forty-hour week for twenty-one years (assuming full-time employment and retirement at sixty-five) would have produced a verdict of $43,680. We find nothing in the record to justify the conclusion that any such formula as that indicated by the trial court was the basis of the verdict or was given undue emphasis in the jury's deliberations. Nor do we have a situation comparable to the one existing in *Owens v. Scott Publishing Co.* (1955), 46 Wn. (2d) 666, 680, 284 P. (2d) 296, where it was undisputed that a jury had based its verdict upon a formula or basis of calculation of which this court did not approve.

We have here a case where decreased earning capacity represents a substantial element of damage. The jury was entitled to conclude that the plaintiff could never again work as a heavy-duty mechanic. In addition to the conceded disability of his back and leg, there was evidence that there was a definite possibility that he would, in consequence of his injuries, develop traumatic arthritis, which could very well result in further disability.

On proper request, the trial court might well have instructed the jury that the plaintiff was entitled to recover

only the present value of the amount of earnings he would probably lose in the future. *Kellerher v. Porter* (1948), 29 Wn. (2d) 650, 189 P. (2d) 223; *Wentz v. T. E. Connolly, Inc.* (1954), 45 Wn. (2d) 127, 273 P. (2d) 485.

The verdict was larger than we would have returned, but it was well within the sixty-thousand-dollar maximum which one of the instructions on damages told the jury it could not exceed; and it was not so excessive, on the basis of the record before the court, as to justify the conclusion that it constituted an injustice to the respondents or that substantial justice had not been done. We hold that the trial court abused its discretion in granting a new trial on that ground. Parenthetically, the fixing of a maximum in an instruction on damages of necessity invites a large verdict by inferentially telling the jury that anything under that amount is permissible.

█ Respondents urge that they are entitled to a new trial on grounds specified in the motion for a new trial but rejected by the trial court. Appellate review may be had of rejected grounds for a new trial. *Johnson v. Howard* (1954), 45 Wn. (2d) 433, 275 P. (2d) 736.

[5] It is asserted that the trial judge's questioning of a juror during *voir dire* deprived the respondents of a fair trial and entitled them to a new trial. See Superior Court Rule 16 (1), *supra*. It is argued that the judge's questioning of this particular juror indicated to the other prospective jurors that no juror would be satisfactory unless he would be able to bring in a verdict in excess of fifty thousand dollars.

The incident in question came about in this way. A prospective juror volunteered the statement that he would "not be too in favor of going over $50,000.00 on a case." Counsel for both parties examined the juror concerning this remark. Appellant then challenged the juror for cause, and respondents resisted. The trial judge questioned the juror along the same line, inquiring whether the juror would require a greater amount of proof for a sum of fifty thousand dollars than for a sum less than fifty thousand dollars. Upon receiving an affirmative reply, the judge

excused the juror. After denying respondents' motion for mistrial, the judge instructed the jury not to attach any significance to the fact that the juror had been excused or to the line of questioning.

We are of the view that the trial judge followed a proper course. There was nothing of a prejudicial nature in his questioning or excusing the juror. Each question was carefully phrased to avoid any appearance of a comment upon the merits of the case. Appellant was entitled to have the juror excused. It seems to us wholly unlikely that the other prospective jurors would find in this questioning and the sustaining of the challenge an indication that the trial court favored a large verdict for appellant.

Respondents also argue that they are entitled to a new trial because the trial court failed to limit the issues in the case solely to the question of damages. See Superior Court Rule 16 (1), (8).

Respondents' amended answer admitted liability, leaving the question of damages as the only issue. Before the trial got under way and in the absence of the jury, counsel for respondents indicated that he would object to any testimony having to do with the cause, time, and nature of the collision, on the ground that such testimony would be immaterial and prejudicial. He agreed, however, that appellant could say how he was sitting and what happened in the bus. The trial judge then made this preliminary statement regarding the kind of testimony he would permit:

"The plaintiff would be entitled to show, certainly, where the plaintiff was seated in the bus, the rate of speed in which the bus in which he was sitting was moving, or whether standing, as it was struck either from the side or from the rear or from the front, and by what it was struck, and what the force of the impact was, how it related to the plaintiff in the sense of what took place and then after the—after it struck, as far as the plaintiff is concerned, that is the manner in which the impact operated upon the plaintiff, merely as a—as surrounding circumstances, explaining or forming the basis and understanding of the type of injury which the plaintiff is alleging he incurred."

■ When the defendant in a negligence case admits liability and contests only the question of damages, he is entitled to have excluded from the testimony all references to the manner in which the accident occurred except such as are relevant to the question of damages. The trial court announced its adherence to this principle and sought to so limit the testimony. A trial court's ruling that testimony received is relevant to the question of damages is not to be overridden unless an abuse of discretion is shown.

In his opening statement to the jury, counsel for appellant briefly described the manner in which the accident occurred. He indicated that the bus in which appellant was riding stopped behind other traffic at an intersection. He also stated that another bus, being driven by respondent Fisher at thirty-five to forty miles an hour, struck the standing bus and wrecked "five vehicles." Objection was made to this statement. Counsel for appellant then told the jury that the question of liability was not in issue, and that the manner in which the accident happened would be described "just to show the force of the impact."

Appellant's first witness was Fred Rust, Jr. Over respondents' objection, Mr. Rust was permitted to testify that he was driving a bus that was involved in the accident; that a string of traffic had stopped for a pedestrian at a crosswalk, requiring him to make a quick stop; that another bus hit his bus from behind; that there were about thirty passengers on his bus, which was hit "quite hard"; that the collision caused his bus to go "forward and a little sideways, a little off the road, and the back end was dented in, the motor dislodged"; that all the seats of his bus were either bent or broken; that the bus was a fairly large piece of equipment.

Appellant's next witness, William E. Jeter, who was riding in the rear bus, testified, over objection, that the bus in which he was riding was going about thirty-five miles an hour and did not slow down prior to the impact.

Appellant testified, over objection, that the bus in which he was riding was hit by another bus; that the impact threw him against the back of a seat and jammed him into a

corner; that some of the seats in the bus were broken and others were bent back.

These were the only witnesses who testified as to the accident itself. Their combined testimony on this point required less than four of the 267 pages of testimony recorded in the statement of facts. With minor exceptions, this testimony and the described portion of the opening statement of appellant's counsel were limited to matters tending to show the force and direction of the impact. About the only statements or testimony unrelated to the force or direction of the impact were those which told the jury that traffic conditions had caused the first bus to stop; that there were thirty passengers on that bus; and that the vehicle which caused the collision was a second company bus. The latter circumstance would have been known to the jury in any event, since the court's instruction summarizing the pleadings revealed this fact and was not excepted to. The reference to traffic conditions and the number of passengers in the bus could hardly have been prejudicial to respondents.

Prior to the trial, respondents took the deposition of one of their medical witnesses, Dr. R. R. deNicola. Respondents' examination of Dr. deNicola during the taking of his deposition indicated that one defense would be that appellant could not have been injured as he claimed, in view of his position in the bus. This defense theory was later confirmed by the questions which respondents' counsel asked two other medical witnesses at the trial, Dr. Glen Axford and Dr. C. Don Platner. Appellant was entitled to anticipate or meet this defense by showing the force and direction of the impact which resulted in his injuries. The trial court did not abuse its discretion in permitting this to be done.

The order granting a new trial is reversed and the cause is remanded with instruction to enter judgment on the verdict.

ALL CONCUR.