[No. 40285.    Department One.    January 2, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE W. HIGGINS *et al., Petitioners.**

*Kenneth C. Hawkins, Phillip Noon,* and *Walter Stauffacher,* for petitioners.

*The Attorney General, John H. Landeen* and *Joseph B. Loonam,* for respondent.

*Reported in 449 P.2d 393.

ROSELLINI, J.—This is a condemnation action, wherein the state is taking a strip of land running along U. S. Highway 12, formerly U. S. Highway 410, and crossing a farm located between Grandview and Sunnyside in Eastern Washington. A portion of the condemned land is under lease to Otto Jacober, who has conducted an automobile repair shop and wrecking yard on it.

The owner and the lessee agreed, prior to the trial on the damage question, that the lessee's interest amounted to 12½ per cent of the value of the leased land and that, if the court would submit a special interrogatory to the jury asking it to state the value of the land leased to Jacober, both parties would abide by the jury's decision. Accordingly, the trial court was asked to submit such an interrogatory and agreed to do so.

The state objected, contending that the submission of an interrogatory of this type was contrary to the mandate of RCW 8.04.110, which provides that the jury in a compensation trial shall fix as a lump sum the amount of damages which shall result to any and all parties claiming an interest in the land. The trial court, however, was of the opinion that the discretion to submit interrogatories, vested in it under Civil Rule for Superior Court 49(b), RCW vol. 0, could be exercised in this case without offending the purpose of RCW 8.04.110.

In submitting the special interrogatory, the court instructed the jury as follows:

> You are giving a general verdict which should represent the total amount that all parties to this case are entitled to as a whole. In order to segregate out of that total figure or total verdict the amount which relates only to the land and improvements covered by the Jacober lease, Exhibit 5, you are given a special interrogatory in which you should state such amount. The respondents as a whole will receive no more than your general verdict, and the figure which you give in answer to the special interrogatory is included in the general verdict and should not be considered by you as additional compensation. Instruction No. 14.

A general verdict of $99,000 was returned and the amount given in response to the special interrogatory was $20,000.

After the jury was dismissed, the judge encountered a juror in the hall, who told him that the jury had added the "lessee's interest" to the total value of the land. Affidavits procured from other jurors tended to confirm this statement.

The state filed a motion for a new trial, based largely on an incident which occurred while the jury was deliberating. A juror knocked on the door and asked the bailiff if the jury could ask the judge for clarification of an instruction. The bailiff advised the juror that this could be done only in the presence of counsel for both parties. The juror indicated that he did not wish to press the matter, and the bailiff did not notify the judge.

In ruling on the motion for a new trial, the court said that this incident was not a basis for granting such a trial, and, while it took cognizance of the contents of the jurors' affidavits, it acknowledged that these could not support such an order, since they concerned matters which inhered in the verdict. However, the court on its own motion ruled that counsel for the owner had made an improper argument in addressing the jury, which was likely to confuse the jurors and cause them to render an erroneous verdict. On the basis of this misconduct and its probable effect on the verdict, the trial court ordered a new trial unless the owner would accept a verdict reduced to $79,000. The owner's petition for a writ of certiorari was granted by this court.

The argument which the trial court found objectionable was one which, the court said, encouraged the jury to add the amount which it had found in answer to the special interrogatory to the amount which it had determined as the value of the land and improvements as a whole, allowing a double recovery for the value of the leased land. It is the contention of the owner that counsel's argument was incorrectly construed by the trial court.

While the trial court did not quote the language of counsel which it found objectionable, we find the following in the record of the argument:

> I most sincerely recommend that you ladies and gentlemen return a verdict in favor of the respondents and fix the damages for the Higginses in the area of $118,000.00, and the damages for Mr. Jacober in the area of an additional $30,000.00, because $20,000.00 would be included in the $118,000.00. The $118,000.00 value, of course, includes the land and improvements on the Jacober property, but does not include anything for the other element, so that your total verdict, in my opinion, should be the $118,000.00 for the Higginses, plus the $30,000.00 that Mr. Jacober requests, and in your interrogatory you should put the amount that you find is attributable to Mr. Jacober alone.

This argument clearly requests the jury to include the value of the *leased land* in the amount to which the Higginses are entitled, which counsel suggests should be $118,000, and should allow $30,000 for the "other element." The "other element" referred to in this portion of the argument had been defined for the jury earlier in counsel's argument as follows:

> Now, Mr. Jacober testified that in his opinion $50,000.00 is the proper figure to put in there [in answer to the special interrogatory], and he arrived at that on the basis that the land and the improvements, I gather from his testimony, are $20,000.00, and that his inventory was $30,000.00, if I understand his testimony correctly, and I think that's what he said on the witness stand.

Thus, the "other element" referred to in the argument was the lessee's inventory, a noncompensable item under the instructions, and certainly not the item to be valued in answer to the interrogatory. The jury was instructed to give the value which it ascribed to the leased land and improvements, not the value of the lessee's interest or his business or his inventory. A request that it give an award for the inventory in *addition* to its award for the land and improvements was contrary to the instructions and highly prejudicial to the state.

Even assuming that the jury could construe this language of counsel as a request for an award of $30,000 for land and improvements, it was still a request to add that amount to the value which it ascribed to the condemned land and improvements as a whole, for counsel stated that the $20,000 value of leased land and improvements would be included in the $118,000 which he recommended that the jury find as the amount to which the Higginses were entitled. In other words, the jury might conceivably have construed this argument as suggesting that $20,000 was the value of the lessors' interest in the leased land and $30,000 was the value of the lessee's interest. There was no evidence to support such a finding and in fact no attempt to prove the respective values of the interests of the lessors and lessee. There was no evidence that the value of the leased land and improvements exceeded $20,000.

Thus, this argument of counsel was unmistakably an invitation to the jury to return a verdict which would include compensation for the leased land in an amount greater than twice the amount which they should find to be its value.

Apparently, counsel for the state did not hear this argument or at least did not comprehend its import, for no objection was raised by counsel, but it did not escape the attention of the trial court. In granting the motion for a new trial, the court said that it had sat waiting for an objection while this argument was being made and that, when none had been forthcoming, it should have made its own objection and should have ". . . [cited] to the jury that counsel was erroneously misquoting the law and was misleading the jury as to Instruction 14 . . . ."

The petitioner in this court argues that the jury could not have been misled because in an earlier portion of his argument he had admonished the jury that its general verdict would cover the interests of both parties. The court was justified in concluding, however, that the salutary effect of this earlier statement by counsel was overcome by the force of the contrary argument made later and near the end of counsel's address to the jury.

■ The granting of a new trial is within the sound discretion of the trial court, where the order is not predicated solely on rulings as to law, and an order granting the same will not be disturbed in the absence of a showing of an abuse of discretion. *Coleman v. George,* 62 Wn.2d 840, 384 P.2d 871 (1963).

Since the record discloses that counsel did make a misleading and prejudicial argument which was likely to confuse the jury as to the meaning of the instruction and lead it to render an erroneous verdict, we cannot say that the trial court abused its discretion in predicating its order for a new trial on this misconduct.

■ It is urged that the trial court abused its discretion in granting the new trial on a ground not urged by counsel. The trial court, however, has the inherent power to grant a new trial on its own motion upon any ground which might have been urged by counsel. Any question concerning this right was laid to rest in *State v. Hawkins,* 72 Wn.2d 565, 434 P.2d 584 (1967), which followed and gave to the holding of *Snyder v. General Elec. Co.,* 47 Wn.2d 60, 287 P.2d 108 (1955), its logical extension.

The petitioner suggests that, since the verdict was within the range of credible evidence, the granting of a new trial was improper. The authorities which he cites stand for the proposition that, if a case has gone to the jury upon proper instructions and legal rulings and the jury has returned a verdict within the range of credible evidence, a new trial cannot be granted on the ground of passion and prejudice. Passion and prejudice of the jury was not the ground on which the new trial was granted in this case, but rather misconduct of counsel and the failure of the court to cure the misconduct with an instruction removing the misconception which it was calculated to create in the minds of the jurors. In the opinion of the trial court, with which we concur, the case did not go to the jury on proper instructions, since a necessary corrective instruction was not given.

We conclude that the trial court did not abuse its discre-

tion in granting a new trial unless the petitioner consents to a reduced verdict.

The state urges in support of the order that the instruction submitting the special interrogatory should not have been given. Since a new trial may be necessary, we will dispose of this contention.

As mentioned earlier in this opinion, RCW 8.04.110 provides that the jury in a compensation trial shall fix as a lump sum the amount of damages which shall result to any and all parties claiming an interest in the land. Although the statute does not forbid the submission of special interrogatories concerning the value of one or more portions of the condemned land, the state contends that such interrogatories necessarily conflict with it.

There is no apparent conflict, and the state has cited no authorities supporting the proposition that there is a latent conflict. The argument advanced is that the submission of a special interrogatory in a case such as this invites the jury to allow double recovery. There is nothing in the language of the instruction given which implies such an invitation, and we cannot presume that the jury misunderstands the plain language of an instruction. The jury is told that it must find the value of the condemned land as a whole, and then specify what portion of that value it assigns to the leased land. A juror who could not understand such a simple instruction would be a poor person to entrust with the responsibility of deciding the value of a large piece of land bearing a variety of improvements, after listening to extensive, detailed, and conflicting testimony. In other words, a juror who could not understand the simple concept embodied in the instruction given could hardly be deemed qualified to serve at all. It was only when counsel distorted the meaning of the instruction and requested the jury to allow double recovery for the value of the leased land that any opportunity for confusion arose.

We cannot agree with the state's contention that it was the legislature's intent, in providing for a lump sum judgment, to eliminate the possibility of such confusion. If this

were the intent, it would seem logical that the legislature would have made similar provision for the trial of condemnation actions by counties, cities, school districts, and other corporations. But in the statutes providing for condemnation actions by these bodies, there is no provision for a lump sum judgment in the trial to determine damages, nor is there any provision for a separate action to determine conflicting claims, as there is in RCW 8.04.140, pertaining to eminent domain by the state.

RCW 8.08.050, pertaining to counties, and RCW 8.16.060 *et seq.*, pertaining to school districts, may be ambiguous as to whether the interests of all parties shall be decided in one proceeding; but RCW 8.12.150, pertaining to cities, and RCW 8.20.080, pertaining to corporations, expressly provide for the determination of all interests, including conflicting interests, in one action. It is improbable that the legislature would make express provision for trials to be conducted in this manner if it were convinced that the determination of the amounts due to different claimants in one action would lead to confusion and double recovery.

A clue to the purpose of the legislature in making provision for a lump sum judgment in the damage trial, followed by a later trial to determine conflicting interests if necessary, can be found in RCW 8.12.150, pertaining to eminent domain by cities. There it is provided that the determination of conflicting interests shall not be permitted to cause delay in the determination of the amount of total damages, but that, if a doubt or contest arises as to the extent of any claimed interest, the jury shall determine the total compensation for the entire property and the respective interests shall be determined thereafter.

This provision reveals that the evil feared, where various claimants are involved, is not confusion but delay. It is logical to assume that the legislature had a particular concern that the state itself not be delayed in the prosecution of its projects which affect the welfare of all the people and therefore made provision for a single lump sum judgment in the damage trial in order to simplify and expedite the

determination of the damages. It would appear, therefore, that if the trial court should, by consenting to the submission of special interrogatories concerning the interests of various claimants, cause a delay in the trial or cause it to be more lengthy than it would otherwise be, this would be an abuse of discretion on its part.

In the case at hand, there is no contention that the trial was lengthened or delayed by the submission of the single interrogatory. The only objection raised by the state was that the interrogatory would inevitably confuse the jury. This objection was without merit. In this instance, the trial court did not abuse the discretion reposed in it under CR 49 (b), RCW vol. 0, to submit special interrogatories.

The order is affirmed.

HUNTER, HALE, and McGOVERN, JJ., concur.

NEILL, J. (concurring)—I am in accord with the result of the majority opinion, but feel constrained to write this concurring opinion as I do not agree with the analysis used by the majority in affirming the giving of the special interrogatory. In this instance, due to the stipulation of the landlord and the tenant, the inquiry to the jury as to the value of the parcel covered by the lease (as opposed to the value of the leasehold) is helpful to the trial court in its obligation to allocate the award at a subsequent hearing. Under these very limited circumstances, I see no harm in the court giving the special interrogatory. However, the discretionary power of the court to give the jury special interrogatories (Civil Rule for Superior Court 49 (b), RCW vol. 0) should not be used to circumvent the statutory procedures in state eminent domain actions.

There are divergent views on the procedure for allocating the award in an eminent domain proceeding.[1] Under one view there is a two-stage proceeding (not to be confused with the three-stage nature of the action, *i.e.*, order of

---

[1] See discussion in *The Condemnation of Leasehold Interests*, 48 Va. L. Rev. 477 (1962); *State Highway Comm'n v. Burk*, 200 Ore. 211, 265 P.2d 783 (1953).

public use and necessity, compensation, decree of appropriation). A jury or court first makes a lump sum award for the value of the premises taken and, subsequently, the court or jury makes a division of that award among the claimants (owners). The other procedure is a single hearing at which the court or jury makes the award and also allocates it among the claimants.

The legislature, in enacting statutes establishing eminent domain practices, had a choice of these procedures. It is not uncommon for states to use one procedure for certain types of governmental acquisition of private property and to use the other procedure for other governmental condemnation. *See The Condemnation of Leasehold Interests,* footnote 1, *supra.* The fact that the legislature may have chosen different procedures for state eminent domain actions than it has for schools, cities, counties, and other public or quasi-public bodies does not thereby give us conclusive evidence as to its intent. Rather, the true test of legislative intent is to be found in the legislative history of the enactment.

When a statute is amended or superseded a material change in wording will give rise to the presumption that a change in purpose is thereby intended. *Longview Co. v. Lynn,* 6 Wn.2d 507, 108 P.2d 365 (1940). Turning to the statutes under which the state is acquiring the land of appellants, we find:

RCW 8.04.110 provides in part:

[T]he jurors by their verdict shall fix as a lump sum the total amount of damages which shall result to all persons or . . . encumbrancers and others interested therein
. . . .

RCW 8.04.130 provides in part:

Upon the entry of judgment upon the verdict of the jury or the decision of the court awarding damages, the state may make payment of the damages and the costs of the proceedings by depositing them with the clerk of the court, to be paid out under the direction of the court or judge thereof; and upon making such payment into court . . . the state shall be released and discharged from any and all further liability therefor . . . .

RCW 8.04.140 provides:

Any person, corporation or county claiming to be entitled to any money paid into court, as provided in RCW 8.04.010 through 8.04.160, may apply to the court therefor, and upon furnishing evidence satisfactory to the court that he or it is entitled to the same, the court shall make an order directing the payment to such claimant the portion of such money as he or it shall be found entitled to; but if, upon application, the court or judge thereof should decide that the title to the land, real estate or premises specified in the application of such claimant was in such condition as to require that an action be commenced to determine the conflicting claims thereto, he shall refuse such order until such action is commenced and the conflicting claims to such land, real estate or premises be determined according to law.

RCW 8.04.110 is derived from Laws of 1925, Ex. Ses., ch. 98, which amended and superseded Laws of 1891, ch. 74. The title to each chapter makes it clear that the legislature was, in each instance, dealing with the state's power of eminent domain and not any political subdivision thereof. The 1891 statute, insofar as pertinent here is:

[T]he jurors at such trial shall make in each case a separate assessment of damages which shall result to any person, corporation or company, or to any county, by reason of the appropriation and use of such land, real estate, premises or other property, and shall ascertain, determine and award the amount of damage to be paid said owner or owners respectively, and to all tenants, incumbrancers and others interested for taking such land, real estate, premises or other property so taken. Laws of 1891, ch. 74, § 5.
The 1925 amendment reads:

[T]he jurors by their verdict shall fix as a lump sum the total amount of damages which shall result to all persons or parties and to any county and to all tenants, encumbrancers and others interested therein, by reason of the appropriation and use of the lands, real estate, premises or other property sought to be appropriated or acquired. Laws of 1925, Ex. Ses., ch. 98, § 2.

It seems clear that the legislature deliberately chose to change the procedure for allocation of the award. It has

decided that the jury making the award is not to apportion that award.

The use of the discretionary procedural device of a special interrogatory should not be used to change the clear duty of the jury as set forth in the 1925 statute. This is particularly true when we find that the Civil Rules in which CR 49(b) is located also contain CR 81(a): "Except where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings." Eminent domain actions are special proceedings.

It may be argued that a special interrogatory is supplementary only and that so long as the jury is instructed to find a single sum for the land taken the statute is satisfied. But the danger of "doubling up of valuation" is too apparent. 1 Orgel, Valuation Under the Law of Eminent Domain § 109 (2d ed. 1953), has the following comment on this possibility, at 464:

> We venture to add our opinion that, in many cases where the courts have *stated* that the total compensation must be based on a valuation of the land as if in single ownership, the juries have in fact taken account of the divided ownership in arriving at this very hypothetical value. And this supposition becomes more plausible when we consider that, though compensation is required to be assessed in one lump sum, the owners of the various divided interests are themselves parties to the condemnation proceedings and are permitted to introduce evidence of the values of their respective interests. (Footnote omitted.)

The very result which has here created the need for a new trial is inherent from the fact that under such procedure the jury may be given evidence of the value of the various interests as well as evidence of the value of the fee. I do not think that it is deprecating jurors to express this concern. Here we have a relatively simple division of title, but the same principle must apply when the court is confronted with the case where the land is divided into future estates, terminable estates, defeasible estates, easements, licensees, and the many other interests which may be created in or carved out of realty.

Finally a most persuasive argument favoring division of condemnation valuation proceedings is that this allows the state to rapidly determine its total obligation and withdraw from the proceedings without awaiting final resolution of what may be a myriad of conflicting claims regarding apportionment of the award. Our cases establish the rule that once the total award is determined and the state pays that sum into court, then the rights of the parties asserting claims to the property are against the fund paid into court rather than against the state. *State v. Hemmingson*, 57 Wn.2d 635, 359 P.2d 154 (1961). It is reasonable that the legislature intended to provide this time advantage to the state in all of its numerous condemnation actions.

Once it is clear that our statutes require separate valuation and apportionment of damages, any interrogatory which allows the jury to apportion the award as part of the initial proceedings would be improper. In this case, however, the interrogatory only asked the jury to determine the value of the land covered by the lease.[2] The determination of the value of the lessee's interest and the apportionment of the total award pursuant to the stipulation of the parties would still be done by the trial court as a separate matter. Under these particular circumstances, I cannot say that the statutory requirement of a 2-step proceeding was violated.

---

February 24, 1969. Petition for rehearing denied.

---

[2]The special interrogatory given was: "What value have you included in the general verdict to represent the value of the property and improvements covered by the Otto Jacober lease on the wrecking yard?"