[No. 14213-2-III.   Division Three.   January 9, 1996.]

THE STATE OF WASHINGTON, *Plaintiff*, v. FARMERS UNION GRAIN COMPANY, *Respondent, and* PACCAR AUTOMOTIVE, INC., *Appellant.*

*Garth N. Bergh* and *Paine, Hamblen, Coffin, Brooke & Miller*, for appellant.

*Paul J. Allison, Robert T. Carter,* and *Randall & Danskin, P.S.,* for respondent.

SCHULTHEIS, J. — The State of Washington condemned land owned by Farmers Union Grain Company and leased by Paccar Automotive, Inc. Paccar sought a portion of the condemnation award for the unexpired term of the lease and the value of any fixtures. The court granted Farmers' motion for summary judgment, declaring Farmers was entitled to the entire condemnation award, and denied Paccar's cross-motion for summary judgment. Paccar appeals, contending a lease provision on allocation of the condemnation award provides for judicial apportionment pursuant to RCW 8.04.140.[1] Farmers cross-appeals the

---

[1]RCW 8.04.140 of the eminent domain statute provides for payment of conflicting claims to a condemnation award as follows:

Any person, corporation or county claiming to be entitled to any money paid into court . . . may apply to the court therefor, and upon furnishing evidence satisfactory to the court that he or it is entitled to the same, the court shall make an order directing the payment to such claimant the portion of such money as he or it shall be found entitled to; but if, upon application, the

denial of its motion for attorney fees and costs. We affirm summary judgment for Farmers and reverse the denial of its motion for attorney fees.

In the summer of 1987, Farmers and Paccar (formerly General Automotive Warehouse, Inc.) entered into lease negotiations for the upper floor of a building owned by Farmers on Division Street in Spokane. Paccar first submitted a proposed lease which included a paragraph awarding the lessee the fair market value of the remaining leasehold and fixtures in the event of a condemnation. Farmers responded with a lease assigning the condemnation award to the lessor, "except that Lessee shall receive from the award the value specifically allocated by the condemnor to the partial or total loss of the unexpired term of this Lease." In the next draft proposed by Paccar, the "value specifically allocated by the Condemnor" included the value "for relocation costs and for any loss of Lessee's fixtures." Farmers' final draft, agreed to and signed by both parties, allocated the condemnation award as follows:

> 20.9 *Award.* The award shall belong to and be paid to Lessor, except that Lessee shall receive from the award the value specifically allocated by the condemnor to the partial or total loss of the unexpired term of this Lease and for any loss of Lessee's fixtures.

The lease, commencing in September 1987, was for a term of 10 years with an option to extend to 25 years.

Farmers' property was within the corridor of the proposed Division Street improvements. In February 1994, the State Department of Transportation instituted a condemnation action of the entire property. Following condemnation proceedings, the State paid $855,000 into the court's registry and took possession of the property in

court or judge thereof should decide that the title to the land, real estate or premises specified in the application of such claimant was in such condition as to require that an action be commenced to determine the conflicting claims thereto, he shall refuse such order until such action is commenced and the conflicting claims to such . . . premises be determined according to law.

April 1994, pursuant to court order. Paccar was forced to lease property at a higher price elsewhere, and demanded a portion of the condemnation award for the value of the unexpired term of the lease and fixtures it left on the premises.[2] Farmers refused and filed a motion for a summary judgment award of the entire amount. Paccar filed a cross-motion for partial summary judgment to confirm its right as a matter of law to share in the condemnation award and requested a hearing pursuant to RCW 8.04.140 to determine the amount.

After a hearing on the motions, the court granted summary judgment to Farmers and denied Paccar's cross-motion. About a week after entry of the court's order, Farmers filed a motion for award of attorney fees, costs and expenses. This motion was denied, the court finding that the lease's attorney fees clause permitted an award of fees only if either party filed suit (and neither party actually "filed suit" here), and that the right to fees was waived because Farmers did not request fees and costs before entry of the summary judgment order. Paccar appeals the denial of its cross-motion for partial summary judgment and Farmers cross-appeals the denial of its motion for attorney fees and costs.

### ALLOCATION OF THE CONDEMNATION AWARD

Paccar contends the trial court misinterpreted the meaning of the lease paragraph allocating the condemnation award. It argues first, that the parties contemplated judicial allocation of the award pursuant to RCW 8.04.140; and second, that Paccar always intended to receive a portion of a condemnation award, and that Farmers knew of this intent when it drafted the final lease.

■ Since this is a review of a summary judgment, we must consider de novo all facts and inferences in favor of

---

[2]Three other parties in interest—Spokane County, U.S. Bank of Washington and Washington Trust Bank—disclaimed any interest in the condemnation award.

Paccar. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 177, 876 P.2d 435 (1994). The parties agree that the negotiations for the condemnation award paragraph and the deposition testimony of the Farmers attorney who drafted it reveal the intent of the parties at the time of the lease formation. They disagree what that intent was.

■ Parol evidence is admissible to show the circumstances under which a contract was executed and to ascertain the intent of the parties. *Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990), *quoted in Lynott v. National Union Fire Ins. Co.*, 123 Wn.2d 678, 683, 871 P.2d 146 (1994). "Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed." *Berg*, 115 Wn.2d at 669 (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 349, 147 P.2d 310 (1944)). Paccar contends that, despite paragraph 20.9's language, the parties must have intended that a court should allocate the condemnation award to both lessor and lessee. This is the only reasonable interpretation, it asserts, because condemnation is a judicial proceeding, defined by statute (RCW 8.04.140) to require apportionment by a court. This contention is unsupported by the record.

■ Parties are presumed to contract with reference to existing statutes. *Wagner v. Wagner*, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980). The state eminent domain statute, RCW 8.04, requires a three-part procedure for condemnation actions: (1) a judicial decree of public use and necessity, (2) a judgment fixing the amount of the award, and (3) the final decree transferring title. RCW 8.04.070, .120; *Public Utility Dist. 1 v. Washington Water Power Co.*, 43 Wn.2d 639, 641, 262 P.2d 976 (1953). After the award has been deposited in the court's registry, the condemnor is released from the action. RCW 8.04.130. Allocation of the condemnation award, however, generally involves a two-step process: (1) the court or jury determines a lump-sum condemnation award for the value of the premises taken, and (2)

the award is distributed to the claimants. RCW 8.04.092, .110, .130, .140; *State v. Higgins,* 75 Wn.2d 110, 118-19, 449 P.2d 393 (1969) (Neill, J., concurring).

▮ RCW 8.04.140 provides a judicial procedure for the distribution of a condemnation award if the title to the land is "in such condition as to require that an action be commenced to determine the conflicting claims thereto . . . ." Such a proceeding is not necessary, however, if the parties to a lease anticipate condemnation and set out their respective rights in a condemnation clause. *See, e.g., State v. Sheets,* 48 Wn.2d 65, 68, 290 P.2d 974 (1955) (when the parties are not "willing to rest their rights upon the settled law which applies to leased property taken by eminent domain," they may fix their respective rights by contract). *See also* 7A Patrick J. Rohan & Melvin A. Reskin, *Nichols on Eminent Domain* § 11.01, at 11-4 (rev. 3d ed. 1995) ("When a lease contains a condemnation clause spelling out the basis for dividing a condemnation award, that clause governs over the generally applicable law. It is a matter of contract; the parties are free to contract away any rights they may have under general law."); *State v. Spencer,* 90 Wn.2d 415, 420, 583 P.2d 1201 (1978) (citing with approval Restatement (Second) of Property § 8.2 (1977), which declares that a tenant is entitled to share in a lump-sum award unless the parties to the lease agree otherwise).

The condemnation clause negotiated by Farmers and Paccar does not contemplate judicial allocation. It awards the entire sum to Farmers and states that Paccar may receive only the value "specifically allocated by the condemnor . . . ." Nothing in RCW 8.04 disallows the condemnor to determine that a portion of a lump-sum award is attributable to an unexpired leasehold or fixtures. The State here declined to allocate the condemnation award. It is true that condemnors do not, as a practice, apportion the awards among the various interests involved. This was a contract negotiated at arm's length, however, by sophisticated parties. Accordingly, we find

that the parties must have contemplated the likelihood of such a condition precedent when they agreed to this provision.

Paccar's second argument, that its intent to share in a condemnation award was understood by Farmers throughout negotiations, fails to address the underlying issue of the contract's objective manifestation of the intent of the parties. That may have been Paccar's original intent, but it agreed to something different. Their negotiations show that: (1) Paccar proposed sharing in the condemnation award, (2) Farmers did not agree and compromised by allowing for allocation by the condemnor, and (3) Paccar signed the final agreement providing for recovery of the value of the unexpired lease and fixtures *only if* specifically allocated by the condemnor. The final contract and the negotiations that led up to it do not show an objectively manifested intent to provide for allocation by any entity other than the condemnor. *See Lynott*, 123 Wn.2d at 684-85 (viewing the relevant extrinsic evidence and the instrument itself to determine the objectively manifested mutual intent).

## ATTORNEY FEES

Farmers cross-appeals the decision of the trial court denying it attorney fees. The court based its decision on two findings: (1) "[n]either party filed suit," as required by the lease's attorney fees provision; and (2) the right to fees was waived because Farmers did not request them before entry of the judgment.

█ RCW 4.84.330 provides for attorney fees and costs to the prevailing party in any action on a contract or lease if the contract or lease specifically provides for such fees and costs. This language is mandatory; the trial court has no discretion to decide *whether* fees should be allowed, only *how much* should be allowed. *Singleton v. Frost*, 108 Wn.2d 723, 729-30, 742 P.2d 1224 (1987); *Farm Credit Bank v. Tucker*, 62 Wn. App. 196, 207, 813 P.2d 619, *review denied*, 118 Wn.2d 1001 (1991).

■ The attorney fees paragraph at issue here provides for reasonable attorney fees, costs and expenses "[i]f either party brings suit to enforce or interpret any provision of this Lease . . . ." Since the original action was instituted by the State against Farmers and Paccar (and others) for condemnation of the property—an action clearly not on the lease contract at issue here—the trial court found that neither party had brought suit. By moving for summary judgment on the issue of its right to the condemnation award, however, Farmers was invoking the power of the court to secure its right. In effect, it "brought" the action to enforce the agreement, and RCW 4.84.330 applies. *See Seattle First Nat'l Bank v. Washington Ins. Guar. Ass'n*, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991) (an action is on a contract if it arose out of the contract and if the contract is central to the dispute); *First Interstate Bank v. Lindberg*, 49 Wn. App. 788, 798-99, 746 P.2d 333 (1987) (although this party did not institute the case, its pleadings raised the issue which was the basis for the attorney fees award), *review denied*, 110 Wn.2d 1026 (1988).

■ Further, we find that Farmers did not waive attorney fees by waiting to request fees after summary judgment was entered. While it might be preferable to request fees earlier so that the court can assess the request before entry of the final judgment, nothing prevents a request for RCW 4.84.330 fees in the cost bill. *West Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 39 Wn. App. 466, 476, 694 P.2d 1101 (1985). In *Warren v. Glascam Builders, Inc.*, 40 Wn. App. 229, 698 P.2d 565 (1985), *overruled on other grounds by Beckmann v. Spokane Transit Auth.*, 107 Wn.2d 785, 733 P.2d 960 (1987), the court contrasted the need to plead certain attorney fees statutes (such as RCW 49.48.030, action on an employment agreement, and RCW 4.84.250,[3] fees for pleadings of less than $10,000) with the lack of such need when fees are based

---

[3]In *Beckmann*, 107 Wn.2d at 790, the Supreme Court held that attorney fees under RCW 4.84.250 need not be specially pleaded, and overruled the *Warren* court only on this narrow issue.

on a contractual provision pursuant to RCW 4.84.330. Citing *West Coast*, the *Warren* court noted in dicta that when the contract provides for attorney fees, the award of fees does not present the same potential for factual disputes as do cases where the applicability of the attorney fees statutes are at issue. *Warren*, 40 Wn. App. at 232 n.1.

In sum, we affirm the decision of the trial court awarding the entire condemnation award to Farmers. We reverse the trial court's denial of Farmers' motion for attorney fees and costs and remand on this issue. Farmers is also entitled to fees and costs incurred on appeal. *Boyd v. Davis*, 127 Wn.2d 256, 264-65, 897 P.2d 1239 (1995).

SWEENEY, C.J., and MUNSON, J., concur.